## SMITH *v.* PIPE.

1. In an action of ejectment, where the regularity of the issuing of a patent from the government is involved, the court is bound to presume that all necessary steps previous to the issuing of the patent have been taken.

2. The rule that in a court of law the legal estate only is regarded, and that a mere equity cannot be set up to bar an ejectment by the owner of the legal estate: *Held*, to apply to the facts of this case.

3. If the legal estate remains in the grantor, he being a public officer and holding as trustee under the act of congress (5 Stat. at Large, 657), his conveyance after the expiration of his office will entitle his grantee to maintain ejectment. The fact of the grantor not executing the conveyance in his official character is immaterial for the purposes of this action.

4. The limitation in letters patent to the successors of the grantee named in the patent can have effect only so far as it accords with the act of congress. The purpose of the act was to confer the right of pre-emption upon the settlers upon town lands.

5. A freehold of inheritance must be implied in the trustee notwithstanding the omission of the words of succession in the statute.

6. The purpose of the statute is to confer the estate upon the county judge or the corporate authorities in their official and politic capacity, and to limit it to the successor until the trust should be finally exhausted.

7. The grant of the sovereign confers upon the donee the capacity to take according to the purpose and to the extent intended.

8. A vacancy in the office will occasion no difficulty, the designation of the incumbent by his proper name being mere surplusage. The power to take is vested in the office, not in the individual.

9. Conveyance by the successor of the donee is sufficient to convey title upon which the grantee may maintain ejectment, and the conveyance may not be questioned in a court of law.

10. Even where a breach of the trust is affirmatively shown, the court cannot make an exception to the general rule, and submit the trustee's conveyance to investigation at law.

*Appeal from District Court of Jefferson County.*

THIS was an action of ejectment commenced by appellant, against the appellee, in the Jefferson county district court, on the 19th day of May, A. D. 1873, for the recovery of the, possession of lots one, two, three, four, five and six in block nine in Bush & Fisher's Addition to Golden City, in Jefferson county.

The declaration was in the usual form claiming the premises in fee. Plea of not guilty. On the trial the appellant offered in evidence a patent of the United States, dated September 1st, A. D. 1866, properly executed to Henry Altman, probate judge of Jefferson county, which, after reciting the fact that certain land warrants had been assigned to Henry Altman, probate judge of Jefferson county, Colorado Territory, in trust for the several use and benefit of the occupants of Golden City town site, according to their respective interests, under the town site act of congress, approved 23d May, 1844, and which had been located upon the following described land, to wit : The east half of the south-east quarter of section twenty-eight, and the west half of the south-west quarter of section twenty-seven, in township three, south of range seventy west, in the district of land formerly subject to sale at Golden City — now Denver City, Colorado Territory — containing one hundred and sixty acres, according to official survey, said patent further says : "Now, know ye, that there is therefore granted by the United States unto the said Henry Altman, judge as aforesaid, in trust for the several use and benefit of the occupants of Golden City town site, according to their respective interests under said act of 23d May, 1844, as assignee as aforesaid, and to his successors and assigns in trust as aforesaid, the tract of land above described, to have and to hold the said tract of land, with the appurtenances thereof, unto the said Henry Altman, judge as aforesaid, in trust for the several use and benefit of the occupants of Golden City town site, according to their respective interests under said act of

23d May, 1844, as assignee aforesaid, and to his successors and assigns·in trust as aforesaid, which said patent is properly executed and recorded." To the introduction of this evidence the appellee objected, but the objection was overruled and appellee excepted.

The appellant also offered in evidence a deed purporting to be executed by Henry Altman to him, which deed is as follows : " This indenture made and entered into this 18th day of February, A. D. 1873, between Henry Altman, formerly of the county of Jefferson, and Territory of Colorado, now of London, in the kingdom of Great Britain, party of the first part, and Ensign B. Smith, of the county of Jefferson, and Territory of Colorado, U. S. A., party of the second part, witnesseth : That, whereas, the said party of the first part did on the 18th day of February, A. D. 1864, then being probate judge of the county of Jefferson, Territory of Colorado, enter under the town site act of the congress of the United States, approved May 23, 1844, entitled an act for the relief of citizens of towns upon the lands of the United States under certain circumstances, the following described lands, being the town of Golden City, and situated in the county of Jefferson, Territory of Colorado, to wit : the west half of the south-west quarter of section twenty-seven, the east half of the south-east quarter of section twenty-eight, the east half of the north-east quarter of section thirty-three, and the west half of the north-west quarter of section thirty-four, in township three, south of range seventy west, of the sixth principal meridian, the same being then subject to entry at the United States land office, situated at Golden City, but now at the City of Denver, in said Territory; and, whereas, on the 1st day of September, A. D. 1866, patents were issued 'by the government of the United States of America to the said party of the first part, conveying to the said party of the first part the hereinbefore described lands ; and, whereas, on the 11th day of October, A. D. 1869, one Joseph Mann, a successor of the said party of the first part, in the office of probate judge of said Jefferson county, after hearing the allegations and proofs of the claimants of the herein-

after described land, being a portion of the lands hereinbefore described, made a deed in fee simple to the hereinafter described lands to the said party of the second part, which said deed is duly recorded on page 231 of book P of records of said Jefferson county ; and, whereas, said party of the first part has never conveyed the legal title to the hereinafter described tract of land to any person, whomsoever ; and, whereas, it is desirable to vest the title to the hereinafter described tract of land in the said party of the second part, as the occupant thereof, as provided by the said act of congress of the United States:   Now, therefore, in consideration of the premises and the sum of one dollar, lawful money of the United States of America, to the said party of the first part in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, hath granted, bargained and sold, and by these presents doth grant, bargain and sell, convey and confirm unto the said party of the second part, his heirs and assigns, the following described tract or parcel of land, situated in the county of Jefferson and Territory of Colorado, to wit :   Commencing at the north-east corner of the north-west quarter of the south-west quarter of section twenty-seven, in township three, south of range seventy west, of the sixth principal meridian, running thence west twenty chains, thence south two chains, thence south, 34° 30', twenty-three and a quarter chains, thence east seven chains, and thence north twenty chains to the place of beginning, containing 28 and $\frac{30}{100}$ acres, the same being on the east side of East street, and a portion of the north-west quarter of the south-west quarter of section twenty-seven, township three, south of range seventy west, to have and to hold the same, together with all and singular the privileges and appurtenances thereunto belonging, unto the said party of the second part, his heirs and assigns forever.

In testimony whereof, I have hereunto set my hand and seal, the day and year first above written.

HENRY ALTMAN.   A Stamped [SEAL.] Wafer.

CONSULATE GENERAL OF THE UNITED STATES, }
                   LONDON.                  }

On the 19th day of February, A. D. 1873, at London, be-
fore me, Joshua Nunn, Vice and Deputy Consul General of
the United States of America for Great Britain and Ireland,
residing at London, duly commissioned — the consul gen-
eral being absent on official duty — personally appeared
Henry Altman, known to me to be the person of that name
described in, and who, in my presence, executed the fore-
going conveyance or instrument of writing, and then ac-
knowledged to me that he executed the same freely and
voluntarily for the uses and purposes therein contained.

In testimony whereof, I have hereunto set my hand and
affixed the seal of the consulate general of
[United States   the United States of America, at London,
Consulate
General's         aforesaid, the day and year last above writ-
SEAL.
London.]         ten.                    J. NUNN,
         *Vice Deputy Consul General U. S. A., London.*"

Which said deed was duly recorded in the records of said
Jefferson county, on the 30th day of April, A. D. 1873.

To the reception of the deed in evidence with the indorse-
ments thereon, the appellee objected and assigned the fol-
lowing reasons for his objection :

1. Said deed purports to be executed by Henry Altman,
not as probate judge, but as an individual.

2. Said deed was executed after the expiration of Alt-
man's term of office of probate judge of Jefferson county.

3. The legal title in fee is not in Altman, individually, but
in his successor in office.

4. The deed is not executed and acknowledged according
to law.

5. The deed conveys more land than the act of congress
authorizes. The act of congress only authorizes the probate
judge to deed lots to occupants at the time of entry.

6. Their entry of services not proven.

7. There is no proof that Smith was an occupant at the time of entry.

8. There is no proof that Smith complied with the provisions of the act of the legislature, or the act of congress, in such cases made and provided.

C. C. Carpenter was called as a witness by the appellant, who testified — the deed of Altman to Smith having been shown witness — "I have seen Henry Altman write, and I know his handwriting. The signature to this deed is his and in his handwriting." Thereupon the court overruled the objections of the defendant and admitted the deed in evidence, and appellee excepted.

The appellant then offered in evidence a deed purporting to be made by Joseph Mann, probate judge of Jefferson county, Colorado, to the appellant, dated the 11th day of October, A. D. 1869, executed by said Joseph Mann to Ensign B. Smith, and acknowledged in the usual form, before D. C. Crawford, county clerk, conveying to said Smith the same land as described in the deed of Altman, which said deed contains the following statement : "This deed made between Joseph Mann, probate judge of Jefferson county, Territory of Colorado, party of the first part, and Ensign B. Smith of the second part, witnesseth : That the said party of the first part, for and in consideration of $35.37, to him in hand paid, and for the fulfillment of the trust in the probate judge reposed, in the entry of the town site of Golden City, at the United States land office, hath remised, released and quit-claimed, and by these presents doth remise, release and quit-claim unto the said party of the second part, and to his heirs and assigns forever (describing the land as described in the Altman deed) together with all the estate, right, title, interest and property possession, claim and demand, whatsoever, as well in law and equity, of the said party of the first part, of, in and to the described premises, and every part and parcel thereof, with the appurtenances, to have and to hold all and singular the above-mentioned and described premises, together with the appur-

tenances unto the said party of the second part, his heirs and assigns forever."

Which said deed was recorded in the records of said Jefferson county, on the 11th day of October, A. D. 1869.

To the introduction in evidence of which deed the appellee then objected for the following reasons:

1. It was not made and executed in compliance with the act of congress under which said land was located and entered.

2. The plaintiff should first show that the land was entered in compliance with law.

3. The same objections that were urged against the reception of the Altman deed in evidence, which said objections were overruled by the court, and the appellee then and there excepted.

Joseph Mann was sworn as a witness, and the deed, purporting to be made by him to plaintiff, shown him, and he testified : " At the time of the execution of said deed I was probate judge of Jefferson county, and as such probate judge, I executed said deed." The deed was read in evidence, with the indorsements thereon, and the appellee excepted.

It was admitted that the entry of the land described on the patent was made January 18th, A. D. 1864.

E. B. Smith, the appellant, was sworn as a witness, and testified as follows : " The lots in dispute are one, two, three, four, five and six in block nine, in Bush & Fisher's addition to the town of Golden City, and are now, and were at the time of the commencement of this suit, in the possession of the defendant, John Pipe, and are on the lands described in the deeds made to me by Henry Altman and Joseph Mann. I know the lines of land and where the lots are on the land." Defendant's counsel said : We make no point on the location of the lots.

The appellant's counsel read in evidence an act of the territorial legislature of the Territory of Colorado, approved March 3, A. D. 1864, entitled an act to legalize and confirm the entry of the town site of Golden City.

VOL. III.--25

The plaintiff rested his case. The appellee moved the court for a nonsuit, for the following reasons:

1. The plaintiff has failed to substantiate a cause of action.

2. Upon all the grounds heretofore urged against the admissibility of plaintiff's evidence; and the court granted the motion of nonsuit, to which the appellant excepted, and the appellant moved the court to set aside the judgment of nonsuit, which motion the court overruled and the appellant excepted, and the court gave judgment of nonsuit against the appellant and rendered judgment in behalf of appellee and against appellant for costs; to which the appellant excepted and prayed an appeal which was granted.

The following errors are assigned on the record.

1. The court erred in granting the defendant's (appellee's) motion for a nonsuit.

2. The court erred in rendering judgment of nonsuit.

3. The court erred in overruling and refusing plaintiff's (appellant's) motion to set aside said judgment of nonsuit.

4. The court erred in rendering judgment for costs in favor of the defendant (appellee) and against the plaintiff (appellant).

Mr. JOHN W. BLACKBURN, for appellant.

Mr. W. TELLER, Mr. A. H. DEFRANCE, and Mr. G. G. WHITE, for appellee.

WELLS, J. 1. The patent, which was admitted on the part of plaintiff below, afforded at least presumptive evidence of its own regularity. Whether the requirements of the act of congress had or had not been complied with, was in the first instance a question for the land officers, and must be taken to have been properly resolved. *Bagnell* v. *Broderick*, 13 Peters, 450; *Winfield Town Co.* v. *Maris*, 11 Kan. 148.

2. If the legal estate in the premises still remained in Altman after the expiration of his official term, his convey-

ance would entitle the grantee to maintain ejectment. 1 Perry on Trusts, § 328.

If such conveyance were in violation of the duties of the trust, the grantee would, of course, hold as trustee for the one entitled under the act of congress; but in courts of law the legal estate only is regarded; and a mere equity cannot be set up to bar an ejectment by the holder of the legal estate. This doctrine has been applied to trust estates of the peculiar character of the one now under consideration. In *Clayton* v. *Spencer*, 2 Col. 378, the probate judge of Arapahoe county, holding the legal estate in the Denver town-site, had conveyed certain lots in violation of the trust, and the grantee brought ejectment against one in possession who had succeeded to the rights of the occupant at the sale of the entry.

On bill brought, the ejectment was restrained, and the plaintiff at law was decreed to release to the defendant; which is in effect to say : 1st. That the conveyance of the probate judge, though in violation of his duty, passed the legal estate ; for if not, the decree must have directed a cancellation of that conveyance, and a re-conveyance by the trustee to the party entitled; and, 2d. That the first conveyance, though in violation of the trust, was unimpeachable at law; for otherwise, equity could not have entertained jurisdiction. *Cook* v. *Rice*, 2 Col. 131, and *Coy* v. *Coy*, 15 Minn. 120, countenance the same doctrine. The circumstance that Altman did not assume to execute the conveyance in question in any official capacity is not material. If the estate did not pass to his successor in office, it remained in Altman, the individual, and his conveyance in his private capacity may transfer it effectually for the purposes of the present action.

3. The limitation in the letters patent to the successors of the grantee named can have effect only so far as it accords with the act of congress.

But the purpose of this statute was to supply a defect in the pre-emption laws, and to confer upon the settler upon town lands, by means of different agencies, the same privi-

lege which had been before extended to the settler upon agricultural lands, *i. e.*, the right of pre-emption in fee. This it is supposed will not be questioned.

We must, therefore, imply in the trustee a freehold of in, heritance, notwithstanding the omission of words of succes, sion from the statute, for this is necessary to the accomplishment of the trust. 1 Perry on Trusts, § 315 ; 1 Washburn on Real Estate, 57*. The estate vested, therefore, either in Altman the individual, and remained in him after his office expired, and is limited to his heirs at his death, or else it vested in the probate judge, and not in the individual, and at the expiration of Altman's incumbency, those who succeeded him in the office succeeded also to the trust estate and powers.

Now considering the probability, or as one may say, the certainty that the public and official character of the trustee named in the statute induced the nomination of that officer in the first instance, and that if the trust estate be deemed to be limited to the successor, those in interest have the assurance which the same public, official, and respectable character affords of the intelligent and faithful administration of the trust, while if it be held to remain in the incumbent at the date of entry after the expiration of his office, it must inevitably descend to the heir ; whereby it may happen that the responsible duties and powers of the trust may devolve upon an infant, a non-resident or convicted felon, it cannot be doubted that the purpose of the statute is to confer the estate upon the county judge or the corporate authorities in their official and politic capacity, and to limit it to the successor in office until the trust should be finally exhausted. Nor does any technical difficulty arise from the circumstance that the county judge, or municipal authority, is not, for all purposes, a corporation, even if this be admitted. The legislative will is not to be frustrated by the application of the technical rules which govern private grants. *Rutherford* v. *Greene*, 2 Wheat. 196. The grant of the sovereign confers upon the donee capacity to

take according to the purpose, and to the extent intended ; *e. g. :* grant in fee by legislative authority capacitates the heir of the grantee to inherit, though he be an alien, *Goodell* v. *Jackson,* 20 Johns. 693 ; and the like grant to a slave enables him to both accept the estate, and transmit it to his heirs, though these be also under the disability commonly annexed to the condition of servitude. *Jackson* v. *Lewey,* 5 Cow. 401.

In like manner it is said to have been decided, that legislative authority to the justices of a particular court, to take bonds to themselves, in their official capacity, confers upon them, *quoad hoc,* a corporate character. *Justices of Cumberland* v. *Armstrong,* 3 Dev. 284; and to this effect is *Polk, Governor,* v. *Plummer,* 2 Humph. 507.

Neither will the circumstance that by the death or removal from office of the incumbent during his term, a vacancy may occur, whereby the fee will be in *abeyance,* breed difficulty, for it seems that the designation of the incumbent by his proper name in the letters patent, as in the present case, is unwarranted by the statute, and may be rejected as mere surplusage. Thus, it was held in the *Governor* v. *Allen,* 8 Humph. 182, that a bond required by statute, to be taken to the governor, sufficiently designated the obligee, as "the governor in and over the State," etc., and that in an action thereon, the office, and not the incumbent, was the plaintiff; and as to the point of pleading this is supported by *Merritt* v. *The Governor,* 4 Yerg. 489 ; so in *Polk, Governor,* v. *Plummer,* it was held, in respect to a similar bond, that the office is the payee ; and to the same effect in *Findlay* v. *Tipton,* 4 Hayw. 216 ; where, the bond being to "John Sevier, governor," etc., whereas, in truth, another held the office at the date of the sealing, it was held that the name of the individual was surplusage, and might be rejected. And so, at common law it is said, " a bishop may take by the name of bishop, without any other name," Shep. T. 237; and though the proper name be mistaken, as a grant to George, bishop of N., where his

name is John; or the grant be to the mayor and commonalty, or a dean, and chapter; and mayor or dean is not named by his proper name, all these and such like grants are good. Id. 236.

And even if we reject these authorities; if we say that the estate is not in the office, but in the incumbent so long as he holds the office, so that in case of vacancy the *fee* will be suspended, still no rule of the common law is violated; for while the fee cannot be put in abeyance by the act of the party, it may by operation of law, of which the case supposed is an example. 1 Washburn on Real Property, 48*.

In this view of the matter the conveyance of probate judge Mann makes a case for the plaintiff. The recitations of this conveyance sufficiently evidence that the grantor was assuming to act in pursuance of the statute. 2 Perry on Trusts, § 511, *c*. The resolution implied in it, that the grantee was at the date of the entry the occupant of the premises, is supported by the presumption which attends the official acts of all officers. *Sherry* v. *Sampson*, 11 Kan. 611; and whether in fact error was committed is not to be contested in a court of law

4. The unusual extent of the trustee's grant, in the present case, is not supposed to afford an exception to the general presumption, which, as we have seen, is indulged to support the acts of the probate judge, in the administration of the trust. Nothing is shown, as to whether the premises were, at the date of the entry, within or without the settled portion of the town site; nor as to their location, with reference to the inhabited portion; nor as to the number of the inhabitants at the date of the entry; nor the character of the premises granted. All these, and perhaps many other circumstances, must be taken into account, in determining whether, in the particular case, so large a tract can be said to be in several occupancy, within the meaning of the act of congress.

In the silence of the record we cannot assume that the trustee has erred or exceeded his duty; and even if a breach

of the trust were affirmatively shown, no reason occurs to us, to make an exception to the general rule, and subject the trustee's conveyance to investigation at law. In any point of view, therefore, the case made by the plaintiff should have been submitted to the jury.

The judgment of the district court is reversed, and the cause will be remanded for further proceedings, according to law.

*Reversed.*