ADDISON A. JACKSON v. THE WINFIELD TOWN CO., *et al.*

TOWN SITE; *Action, Not Maintainable.* On July 10, 1871, the probate judge of Cowley county entered, at the United States land office, the town site of Winfield, in said county, under the act of Congress entitled "An act for the relief of the inhabitants of cities and towns upon the public lands," approved March 2, 1867. (14 U. S. Stat. at Large, p. 541.) On September 20, 1871, and afterward, said probate judge executed to all the occupants of the town site, respectively, deeds conveying to them, in fee simple, all their several and respective interests in said town site. There still remained in said town site several lots which were vacant and unoccupied. These vacant and unoccupied lots the probate judge conveyed by deeds to the Winfield town company. Afterward, J., who was an occupant of said town site, but not of any of said vacant lots, commenced this action to set aside and cancel said deeds from the probate judge to the Winfield town company. *Held,* That the action cannot be maintained.

*Error from Cowley District Court.*

ACTION by *Jackson*, against the *Winfield Town Company*, and others, to set aside two certain deeds executed by the probate judge of Cowley county to said town company for certain lots in the town or city of Winfield. The nature of the action, and the facts, appear in the opinion. Trial, and judgment for the defendants, at the December Term, 1878, of the district court. *Jackson* brings the case here.

*Coldwell & Coldwell*, for plaintiff in error.

*Hackney & McDonald*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Addison A. Jackson against the Winfield town company, to set aside two certain deeds executed by Thomas B. Ross, probate judge of Cowley county, Kansas, to said Winfield town company, for certain lots in the town or city of Winfield. It appears from the petition of the plaintiff that, in 1871, he (the plaintiff) with others settled upon and occupied a certain piece of government land, upon which the city of Winfield is now situated; that they caused said land to be surveyed into blocks, lots, streets, alleys, etc., and to be converted into the town site of Winfield; that on July 10, 1871, the said probate judge entered this town site at the United States land office, under the act of congress entitled "An act for the relief of the inhabitants of cities and towns upon the public lands," approved March 2, 1867; (14 U. S. Stat. at Large, p. 541;) "that afterward, to wit, on the 20th day of September, 1871, and divers days thereafter, the said probate judge executed, acknowledged and delivered to him (the plaintiff, Jackson) and each of his associate occupants upon said town site, deeds in fee simple for his and their several and respective interests in said town site;" that there was still other property left in said town site, consisting of about five hundred lots, which lots were vacant and unoccupied; that the said probate judge exe-

cuted the said two deeds to the Winfield town company, conveying to the company these five hundred lots. The plaintiff prays in his petition that these two deeds be set aside and canceled.

Just what the Winfield town company was, we are not informed. Whether it was a copartnership, or a corporation, and whether it was composed of the plaintiff and his said associate occupants, or a portion of them, or of other individuals, we cannot tell. The petition states that J. C. Fuller was the president of this company, and that E. C. Manning was the secretary, but who the other members of the company were, and whether Fuller and Manning and the other members were associate occupants of the town site with the plaintiff, the petition does not state, nor are we in any manner informed. And who the associate occupants of the town site were, is nowhere disclosed. Whether they were the town company or not, is not shown. But passing over all this, and supposing that the plaintiff was not a member of the town company, and therefore that he did not get any interest in the said 500 lots by the said conveyance from the probate judge to the town company, still has he any cause of action against the town company? Did he have any interest in said 500 lots? To whom did they belong? To whom should they have been conveyed, or what should have been done with them? In other words: after the probate judge has executed deeds conveying to *all the occupants* of the town site, all "their several and respective interests in said town site," then what is he to do with the remaining portion of the town site, which nobody occupies, and nobody can claim according to the strict letter of the act of Congress?

1. Must it revert to the United States?

2. Or, will the probate judge continue to hold it?

3. Or, will it become the property of the state, under the control of the legislature? The act of congress provides for the probate judge "to enter at the proper land office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof ac-

·cording to their respective interests, the execution of which trust as to the disposal of the lots in such town and the proceeds of the sales thereof to be conducted under such rules and regulations as may be prescribed by the *legislative authority of the state* or territory in which the same may be .situated." (14 U. S. Stat. at Large, p. 541.)

4. Or, under the act of congress and our own statutes, will such unoccupied property become the property of the county for the use of the public? In this state the fee of all streets, alleys and other public grounds in cities is in the county for the use and benefit of the public. (Comp. Laws of 1879, p. 589, § 6; *Smith v. Leavenworth*, 15 Kan. 81, 85.)

5. Or, will such unoccupied property become the property of the city? This seems to have been the opinion of a majority of the supreme court of Colorado in 1871. (*City of Denver v. Kent*, 1 Col. 336.)

6. Or, will this unoccupied property remain open for the future settlement and occupancy of still other occupants, and become the property of the several settlers and occupants, as they respectively settle upon it? This seems to be the view ·of Mr. Justice Wells, of the supreme court of Colorado. (1 Col. 350.)

7. Or, under said act of congress and our own statutes, will said unoccupied property become the property of the town company? Section 12 of the act of the legislature relating to town sites reads as follows: "All persons who select and lay out a town site, and their assigns, shall be deemed ·occupants of said town site and the lots embraced therein, within the meaning of the above-recited acts of congress, and deeds shall be made accordingly." (Comp. Laws of 1879, p. 973. See also *Leech v. Ranch*, 3 Minn. 448.)

8. Or, will this unoccupied property become the *joint* and *private* property of those persons who may be occupants of the town site at the time the same is entered at the United States land office? There is no statute, state or federal, that we know of, that would authorize this; and there is no de-

35 — 23 KAS.

cision of any court, that we are aware of, that sustains or promulgates any such doctrine; and yet we think that the plaintiff must show that this unoccupied property becomes the *joint* and *private* property of himself and his associate occupants, or he cannot maintain this action, or any other action with reference to the property. If the property goes to the public, to the state, the county, or the city, or back to the United States, then certainly he has no right to maintain the action. He has no especial authority to become the champion of the community, and in his own name to challenge the supposed wrong-doers to meet him in the courts of justice, there to answer for their supposed shortcomings, their moral delinquencies, their oblique transactions, or their positive wrong-doings affecting injuriously the best interests of the public. Public officers are elected and appointed to protect the interests of the public, and private individuals must confine themselves in their litigious controversies to the protection and maintenance of their own private affairs. This has been decided over and over again by the courts in Kansas; and if anything can be said to be settled, we think this is settled. Under no circumstances can the plaintiff maintain such an action as this, unless he can show that he has some private interest of his own in the subject-matter of the controversy. Has he any such interest? The plaintiff's counsel almost admit that he has not. They say: "It will be observed that we do not discuss the question what is to be the final disposition of the residuum of lots after all individual claims have been satisfied. Further legislation can alone solve that problem. (1 Col. 353; 11 Kas. 151.) We may remark, however, that if the legislature should direct that a certain portion of the lots should be set apart for public grounds and parks (11 Kas. 151), or that the 'proceeds of the sale thereof' should be appropriated for the benefit of public buildings and schools (1 Col. 345), either or all these objects would be a beneficent exercise of legislative discretion, clearly within the objects of the trust."

We think that the plaintiff has no private interest of his own in this controversy, and therefore that he cannot maintain this action. The judgment of the court below must be affirmed.

All the Justices concurring.