Beck, C. J.
This was an action of ejectment, brought by the appellee, Caroline H. Bartels, to recover possession of lot 6, of block 63, in the east division, of the city of Denver. It was originally instituted, against the defendant Anderson only, the complaint alleging that Louis F. Bartels, deceased, died July 27th, 1874, seized in fee of said lot, and by his last will devised the same to the plaintiff, for and during her life, or until she again married. That she has not since married; that on September 1st, 1874, while plaintiff was seized in fee and enti- *547 tied to possession, the defendant, without right or title, entered upon the lot, ejected the plaintiff, and still withholds the possession from her.
Anderson answered, denying that Louis F. Bartels, was, in his lifetime, seized of the property, and averring that said defendant entered upon the premises, September 1st, 1878, as tenant of his co-defendant, Caroline E. Downing, and has continued in possession to the present time.
Caroline E. Downing, who was made a co-defendant on her own motion, also answered, denying the title alleged in Louis F. Bartels, and the title and right of possession of the plaintiff, and averred that she, long prior to September 1, 1874, was seized in fee of the premises, and long prior to that date, was in lawful possession thereof as the owner in fee.
The cause was tried to a jury, the trial developing the fact that both the plaintiff, Bartels, and the defendant, Downing, claimed title from the same source, viz, by deeds from the Probate Judge of Arapahoe county.
The jury returned a verdict in favor of the plaintiff, Caroline H. Bartels, on which judgment was entered, that she recover the lot and premises in controversy, and that a writ of restitution issue therefor.
This lot comprised a portion of the original town site of the city of Denver, entered by James Hall, Probate Judge of Arapahoe county, on the 6th day of May, 1865, by virtue of the special act of Congress “for the relief of the citizens of Denver,” approved May. 28th, 1864. 13 Statutes at Large, 94.
The plaintiff, to maintain the issues on her part, introduced the following conveyances, to wit: United States to James Hall, Probate Judge, patent for said town site, dated July 1st, 1868, which recites the entry of the land in trust, for the several use and benefit of the occupants thereof, according to their respective interests, under the act of Congress aforesaid, and to his successors and assigns in trust as aforesaid.
James Hall, Probate Judge, to Omer O. Kent, successor in office, same tract, March 16th, 1867. Omer O. Kent, Probate Judge, to Jacob Downing, successor in office, same tract, August 31st, 1867. Jacob Downing, Probate Judge, to Henry A. Clough, successor in office, same tract except -the executed part of the trust, September 23d, 1869. Henry A. Clough, *548 Probate Judge, to Louis F. Bartels, the lot in controversy, by virtue of a sale in pursuance of the territorial act of February 8th, 1872, and previous legislation, dated October 29th, 1872.
It was then admitted that the plaintiff is the heir of Louis F. Bartels, deceased.
Objections were made, and exceptions saved to the admission of deeds from Downing to Clough, and from Clough to Bartels.
The defendant, Caroline E. Downing, to maintain the issues on her part, introduced certified copies of the following deeds to said lot:
Jacob Downing, Probate Judge, to Morris B. Foy, October 3d, 1868.
Morris B. Foy to Samuel N. Hoyt, July 9th, 1869. Samuel N. Hoyt, to Jacob Downing, June, 28th, 1870. Jacob Downing to Daniel C. Oakes, June 10th, 1871. Daniel C. Oakes and wife, to Caroline E. Downing, January 3d, 1873, which deeds were received in evidence.
Defendant then offered in evidence certified copies of the following conveyances:
A certificate of one share in Denver city, to William Clancey, issued by E. P. Stout, president, and William Larimer, secretary, bearing date March 31st, 1859.
Deed from William Clancey to William Marchant, dated November 1st, 1859.
Deed from William Marchant to D. A. Johnston, dated June 4th, 1861, all of which conveyances were rejected, and exceptions to the rulings saved.
The said defendant then introduced a tax deed for said lot, in evidence, executed by James M. Strickler, treasurer of Arapahoe county, to Jacob Downing, dated February 11th, 1875, by virtue of a tax sale for delinquent taxes of the year 1871.
Testimony was introduced, showing that D. A. Johnston built a small house partly upon this lot, late in 1871 or early in 1872, and that he executed a lease of the premises to tenants, July 1, 1872.
The said defendant then offered to prove that Johnston was in the occupation of the premises in the fall of 1871, and continued in the occupation thereof until 1875, when he conveyed *549 the same to the defendant, Downing, and that she continued in the occupation thereof until the commencement of this suit, and is still in the occupation thereof. This offer was rejected as immaterial, to which ruling an exception was reserved.
The plaintiff was permitted to introduce testimony in rebuttal, for the purpose of impeaching the title derived by Caroline E. Downing, by mesne conveyances from Jacob Downing, Probate Judge, on the ground that the deed executed by said Probate Judge to Morris B. Foy, was not executed in conformity with the acts of Congress and the acts of the Legislature of Colorado relating to the execution of the trust vested in the Probate Judge.
Said plaintiff was also permitted to introduce evidence to show that said deed was fraudulently issued by said Probate Judge, there being no such person as the said grantee,'Morris B. Foy.
The jury were instructed, substantially, that the conveyances introduced by the plaintiff, made out a prima facie case in her favor, entitling her to recover.
They were told to disregard the outstanding title acquired through the tax sale; and as to the title derived by the said defendant, by conveyances from Downing, Probate Judge, that it constituted a complete defense to the action, unless they found from the evidence that no such person as the said Morris B. Foy existed, or that he had not, by himself or agent, filed his claim to the lot in question with the Probate Judge, on or before the 10th day of August, 1865; but that if they found either of the last mentioned facts to be true, the deed to Foy was fraudulent and void, and the verdict must be for the plaintiff.
The controlling questions presented by this record relate to the admission and exclusion of testimony, and to the instruction referred to.
The plaintiff produced in evidence a regular chain of conveyances from the government down to herself; the defendant, Downing, an equally regular chain of title from the same original source, to her.
No error occurred thus far in the admission of testimony.
The defendant’s offer to introduce a title derived from the Denver Town Company, was properly rejected, and the jury *550 correctly instructed to disregard the tax title. The former could not, in any view of the case, prevail over the title derived by the plaintiff by mesne conveyances from the government, and the latter was void for the reason that the property was not liable to taxation at the time it purported to have accrued. Equally incompetent, as against the plaintiff’s title; was the offer in this action to prove the occupation and improvements of D. A, Johnston, and his conveyance to said defendant. There was no way of deriving title except as pointed out by the congressional and territorial acts, and none of the rejected testimony constitutes a title thereunder. Clayton v. Spencer, 2 Colo., 380.
This narrows the contest down to the title vested by the United States in the' Probate Judge of Arapahoe county, and the two chains of title proceeding from that functionary; one to the. plaintiff, through deed of Henry A. Clough, Probate Judge, to Louis F. Bartels, bearing date October 29th, 1872; the other to the defendant, through deed of Jacob Downing, Probate Judge, to Morris B. Foy, bearing date October 3d, 1868.
The deed from Clough, Probate Judge, was executed on the assumption that the title of, the lot in controversy had not passed by the deed from Downing, his predecessor in office, to Foy, and is supposed to have been authorized by the territorial act, approved February 8th, 1872, entitled, “An act to provide for the further execution of the trust relating to the city of Denver, and to regulate the same.”
This act required the Probate Judge to make a list of all parcels of land embraced in the patent to the town site, to which claims had not been filed on or before August 9th, 1865, specifying certain reservations and exceptions, and upon completion of the list, to advertise and sell said parcels at public vendue to the highest bidder for cash.
Notice was required to be given of the time when the Probate Judge would commence to make the list, and when sitting for that purpose; the city attorney, or any citizen, had a right to be present, and to suggest, by petition, that lots or lands had been omitted from the list, and that filings which appeared to have been made on or before the 9th day of August, 1865, were in fact made after that time. Upon presenta *551 tion of such petition, continues the act, “it shall be the duty of said Probate Judge to inquire into the same by such competent testimony as may be produced before , him in that behalf, and if he shall be of opinion that such lots or lands have been wrongfully omitted, he shall thereupon include the same in such list, and proceed to advertise, and sell the. same.”
In pursuance of said act, Probate Judge Clough prepared a list of lots for public sale, including the lot in controversy, and the latter was struck off and sold, as before stated, to said Louis F. Bartels. .
In order to sustain the .title thus acquired, it was necessary for plaintiff to show the invalidity of the prior conveyance by Judge Downing. For this purpose she was permitted to introduce testimony tending, to show that the preliminary steps and conditions, requisite to a valid conveyance, had not been complied with prior to the execution of the deed by Judge Downing; also, evidence to show that said deed was fraudulently executed, there being no such person as Foy, the grantee.
We think the Court .erred in permitting an inquiry to be instituted, under the pleadings in this case, into the question whether the necessary preliminaries had been observed prior to the execution of the deed by Judge Downing. It was strictly a legal action, no equitable issues being present by the pleadings. ..The complaint contained no prayer for . equitable relief, nor any allegations to notify defendant that the regularity of the incipient steps required to obtain a deed from the Probate Judge, would be called in question. The deed was regular upon its face, and purports to have been executed to the person found to be entitled thereto, under the laws of Congress and the statutes of Colorado. It was executed by the officer entrusted by the government with the legal title, and duly authorized, by law to convey it.
In such case a deed is not impeachable in a legal action for failure to comply with any preliminary requisites. The doctrine of presumptions in favor of official acts obtains, that the officer empowered by law to made the grant, did his duty in all respects, and. had required the grantee to show, by legal proofs, that he had complied with all rules and. regulations necessary to -be complied with to entitle him to the deed, 1 Phil. Ev., *604.
*552 The execution and delivery of a deed to a portion of the Denver town site, by the Probate Judge, under and by virtue of the several acts and provisions of law, in relation to the subject, is analagous to the grant of a patent by that department of the government, whose province it is to supervise the variious steps and proceedings necessary to be taken to obtain the title. In such case, if there was an absolute want of power to issue the patent, as if the grantor had no title to the thing granted, or if the sale is not authorized by law, the land having been reserved from sale, the title set up under the grant is void ab initio, and the fact may be shown in an action at law. But if the grant is merely voidable, it can only be impeached in an equitable action. Sherman v. Buick, 3 Otto, 209; Stoddard v. Chambers, 2 How., 318; Easton v. Salisbury, 21 How., 426.
Where, however, no defect of title or authority exists, but the land is subject to sale, it is held that the officers of the land department, in the course of their duties, exercise a judicial function, and their acts cannot be impeached in a collateral action.
Judge Field says, in Smelting Co. v. Kemp, 14 Otto, 640, “In the course of their duty, the officers of that department are called upon to hear testimony as to matters presented for their consideration, and to pass upon its competency, credibility and weight. In that respect, they exercise a judicial function, and therefore, it has been held in various instances by this Court, that their judgment as to matters of fact, properly determinable by them, is conclusive when brought to notice in a collateral proceeding. Their judgment in such cases is, like that of other special tribunals upon matters within their exclusive jurisdiction, unassailable except by a direct proceeding for its correction or annulment. The execution and record of the patent are the final acts of the officers of the government for the transfer of its title, and, as they can be lawfully performed only after certain steps have been taken, that instrument, duly signed, countersigned and sealed, not only operates to pass the title, but is in the nature of an official declaration by that branch of the government to which the alienation of the public lands under the law is entrusted, that all the requirements preliminary to its issue have been complied *553 with. The presumptions attending it are not open to rebuttal in an action at law.”
The same rule is held applicable to State grants or patents. In the case of Polk’s Lessee v. Wendal, 9 Cranch, 87, Chief Justice Marshall makes the inquiry, “Is it in any, and if in any, in what cases allowable, in an ejectment, to impeach a grant from the State, for causes anterior to its being issued?”
He then refers to the facts that laws provide safeguards for the protection of the incipient rights of individuals, and to protect the State from imposition as well; that officers are appointed to supervise the proceedings and to execute the grants under rules prescribing their duties, and his conclusion is expressed in these words: “When all the proceedings are completed by a patent issued by the authority of the State, a compliance with these rules is presupposed. That every prerequisite has been performed, -is an inference properly deducible, and which every man has a right to draw from the existence of the grant itself. It would, therefore, be extremely unreasonable to avoid a grant in any Court, for irregularities in the conduct of those who are appointed by the government to supervise the progressive course of a title from its commencement to its consummation in a patent.”
He holds that the remedy of one injured by a violation of the law and rules of procedure, is in equity, and assigns the following reasons therefor: “On an ejectment, the pleadings give no notice of these latent defects of which the party means to avail himself; and should he be allowed to use them, the holder of the elder grant might often be surprised. But in equity, the specific points must be brought into view; the various circumstances connected with these points are considered, and all the testimony respecting them may be laid before the Court. The defects in the title are the particular objects of investigation, and the decision of the Court in the last resort upon them is decisive.”
Now, in the application of the foregoing principles to the case under review, it is to be observed, that the Denver town site was located upon lands belonging to the United States. Numerous claimants had located upon separate parcels thereof, built houses and otherwise improved the same, and became, *554 under the law, entitled to conveyances. The Government, instead of issuing patents to the several claimants, and instead of granting the tract to the territorial organization, transferred the title of the entire tract to the Judge of the Probate Court of Arapahoe county, in trust for the parties entitled to conveyances. By the terms of the grant, the Probate Judge was the officer and representative of both the federal and the territorial governments in the disposal of these lands. He was invested with functions analagous and similiar in character to those of the land department of the general government, or of the officers of a State, charged with the same class of duties.
His duties involved the hearing and consideration of testimony concerning the rights of claimants, and passing upon its competency, credibility and weight. It also involved judicial trials before him, in certain instances, wherein he was required to render judgments, from which appeals might be prosecuted to the Supreme Court of the territory.
The Congressional act of May 28th, 1864, authorized said Judge to execute the trust thus reposed in him, by the disposal of the lots and parcels of land, in accordance with rules and regulations to be prescribed by the territorial Legislature.
The legislative act of March 11th, 1864, required him to convey the several parcels to the persons entitled in law or equity to the possession thereof, at the date of the entry of the town site, or to his, her, or their heirs or assigns. In certain instances, he was required to summon adverse claimants before him, and, after hearing their proofs and allegations, to determine the controversy between them. In such cases, if a person failed to appear before him when duly summoned, he was forever barred from asserting any right, title or interest in the grant.
By the legislative act of February 8th, 1872, he was invested with other and further judicial powers relating to said grant.
When a petition was presented, setting forth that the petitioner had acquired title in good faith, and without notice of defects therein, to lots or lands listed for sale under said act, and that the petitioner had built a house thereon, the Probate Judge was required to set the petition down for hearing; to empanel a jury of six men, if required by the petitioner or by the city attorney, and if upon the trial, the facts stated in the *555 petition were found to be true by the Court or jury, as the case might be, the premises were to be withdrawn from sale, and deed executed to the petitioner.
These examples show that the duties and powers of the Probate Judge were not merely ministerial, but that in executing the provisions of the Congressional and legislative acts relating to this grant, he was constantly called upon and required to exercise judicial discretion and powers.
As to any parcel of land, therefore, wherein the trust has been consummated by the execution of a deed, the same presumptions obtain that all preliminary requirements have been complied with, and the same reasons exist for holding these presumptions conclusive, and not open to rebuttal in actions purely legal, as exist in the cases of federal and State grants.
If a deed has been executed by the Probate Judge to one not entitled to it, the remedy of the injured party is a direct proceeding to set it aside, or for other equitable relief consistent with the facts and circumstances of the particular case.
The deed to Morris B. Foy is not void upon its face. Noncompliance with the law on part of the grantee, renders it voidable only, and for these reasons we are of opinion that the Court below erred in the admission of testimony to impeach the preliminary proceedings, and to contradict the proofs upon which the Probate Judge acted in adjudging the said Foy entitled to the deed.
The citation from Smelting Co. v. Kemp, 14 Otto, 649, relied upon by counsel for defendants in error to support the rulings below, is not in point. The paragraph referred to, mentions two instances in which it is proper, when patents are offered in evidence, to introduce the record of the initiatory proceedings: First, when there is a contest between two patentees' for the same land; a patent takes effect from the date of the original proceedings to obtain title, and in such case they are referred to for the purpose of ascertaining which of the contestants took the first steps. The other instance was under a State statute declaring a patent void, where no entry, as an initiatory proceeding, has been made. The ruling upon this point is, that if the patent is silent on the subject, it is competent to show that the initiatory step was not taken at all.
But there is no warrant in the opinion for the position as *556 sumed in this case, that the record of the original and initiatory proceedings may be produced, and then contradicted and impeached in an action at law. On the contrary, the doctrine of the whole case is that the records of the original proceedings are conclusive in actions of this character. The language of the Court is: “The judgment of the department upon their sufficiency was not, as already stated, open to contestation. If in issuing a patent its officers took mistaken views of the law, or drew erroneous conclusions from the evidence, or acted from imperfect views of duty, or even from corrupt motives, a Court of law can afford no remedy to a party alleging that he is thereby aggrieved. He must resort to a Court of equity for relief,” etc.
The deed of the Probate Judge, in this instance, cannot be said to be wholly silent as to the rights acquired by the grantee through initiatory steps taken by him. It recites that he “is justly entitled to the lot * * * * as the rightful occupant thereof, and the bona fide owner of the improvements thereon, under the provisions of said act of Congress.”
While it does not state the date of his filing, it is an official declaration that the grantee has been adjudged entitled to the deed.
If the deed was executed and delivered to a bona fide grantee in pursuance of this adjudication, it was not subject to investigation or impeachment in this action. Smith v. Pipe, 3 Colo., 187.
The production in evidence of the claim purporting to have been filed by Foy, shows, if genuine, that it was filed in time, its date being June 8th, 1865. It was not competent to admit testimony to show that the filing was not, in fact, made prior to August 10th, 1865, or that the lot was not occupied or improved until long after said filing purports to have been made.
The Court also erred in instructing the jury that if they believed from the evidence, that no such person as Morris B. Foy ever existed, or that his claim was not filed on or before August 10th, 1865, and that the filing produced in evidence was not made until long after that time, they must find for the plaintiff.
An instruction is fatally erroneous which contains one cor *557 rect and one incorrect proposition respecting the legal effect of the evidence produced on the trial, and which tells the jury that if the evidence sustains either proposition, the verdict must be for the plaintiff. It renders it impossible to know upon what finding of facts the verdict is based.
France & Rogers, for appellants.
Butler & Rogers, Bartels & Blood, for appellee.
The latter branch of the above instruction is clearly erroneous as to its application to this case, while the clause relating to the non-existence of Foy, states a correct proposition of law. But there is no way of ascertaining whether the verdict is based upon the evidence tending to show that the claim was not filed in time, or upon the evidence that no such person as Foy was ever known to exist. If there was no grantee capable of taking the title, it certainly could not pass. “A grantee is as necessary to the conveyance of land as a grantor, and it follows that a grant to a fictitious person is simply void.” U. S. v. Southern Colorado Coal & Town Co., 1 Denver Law Journal, 299; 4 Colo. L. R., 169, and cases cited.
But since we cannot say that this fact was found by the jury, the judgment must be reversed for the errors pointed out.

Judgment reversed.