## MURRAY V. HOBSON.

1. It is a settled question that, when a defendant in ejectment files a cross-complaint assuming to set up equities entitling him to affirmative relief, the facts relied upon therefor must be as fully stated as they are required to be in an original bill praying affirmative relief.

2. Where a trustee in whom is vested, under the law of congress and by patent from the United States, the lands comprising a town site, to be held in trust for the use and benefit of the occupants thereof, has executed a deed of a parcel of such land to one claiming to be a beneficiary of the trust, the legal title of such parcel passes out of the trustee and vests in the grantee; no individual not then a beneficiary can thereafter in his own right question the validity of such conveyance; nor can he, by subsequent intrusion upon the possession of the holder of the legal title, acquire a right to inquire into or litigate the question whether all the preliminaries required by the local law were taken by the party holding the title from the trustee.

3. When a statute is referred to by general descriptive particulars, some of which are manifestly false and others true, the former may be rejected as surplusage, provided the remainder is sufficient to show clearly what is meant.

4. Where a statute would operate unjustly, or absurd consequences would result from a literal interpretation of terms and words used, the intention of the framers, if it can be fairly gathered from the whole act, will prevail.

5. A deed of land included in a town site described the land as "designated on the recorded plat as the vacant land formed by change of the bed of the Arkansas river," and by metes and bounds. In an action involving the title to the land conveyed, *held*, that the whole description was properly admitted in evidence, and that oral testimony was admissible to identify the land (especially as no tract designated in the manner stated appeared on the plat), although the plat itself, or a copy, should be produced, or the non-production thereof accounted for, before admitting such oral evidence.

6. Where copies of a town plat were examined by court and counsel on a trial to the court, were marked as exhibits, and copies of them

attached to the record, and the judge found that the papers were true copies, and that the original was lost, and could not be produced. *held,* that a technical objection, raised on appeal, that the copies were not introduced in evidence, would not be allowed to prevail.

·7. In a description of land in a deed, a call for block 32, *held* properly rejected, where it appeared from the whole description that block 30 was intended.

*Appeal from District Court, Pueblo County.*

THE facts are stated in the opinion.

Messrs. J. C. ELWELL, STONE and ANDERSON, and VINCENT D. MARKHAM, for appellant.

Messrs. CHAS. E. GAST and JOHN M. WALDRON, for appellee.

BECK, C. J.    The first, second and third errors assigned involve the merits of this controversy, and raise all the material questions affecting the proceedings and judgment.

The first alleged error complained of is the sustaining of the plaintiff's (appellee's) demurrer to the defendant's cross-complaint.    The disposition of this ground of error will fix the equitable *status* of the appellant with respect to the subject-matter of this controversy, on which depend the pertinency and materiality of many of the questions presented by this voluminous record.    It is a settled question that, when a defendant in ejectment files a cross-complaint, assuming to set up equities entitling him to affirmative relief, the facts relied upon therefor must be as fully stated as required to be in an original bill praying affirmative relief.    The primary question, then, raised by the demurrer is, Does the cross-complaint state facts which entitle the defendant to affirmative relief?

The basis of the defendant's equitable claim to relief is substantially as follows: The lot in controversy, in 1869,

comprised a portion of the town site of the town of Pueblo, in the county of Pueblo. Mark G. Bradford was then county judge of said county, and in that capacity he entered the town site, and received the government patent therefor, under and by virtue of the act of congress of March 2, 1867, entitled an "Act for the relief of the inhabitants of cities and towns upon the public domain." This act of congress vested the title of the lands so entered in patentee, and his successors in office, in trust for the several use and benefit of the occupants thereof, according to their respective interests. On December 5, 1870, a deed was executed by George W. Hepburn, the county judge of Pueblo county, to one James G. Robinson, of twelve acres, parcel of the tract patented to Bradford, and, by subsequent intermediate conveyances, the plaintiff succeeded to Robinson's title to the portion thereof now in controversy.

Defendant alleges that the deed from County Judge Hepburn to Robinson was void by reason of Robinson's failure to perform certain preliminary steps required by law, and necessary to authorize a conveyance by the trustee. It is further alleged, as a result of Robinson's omission to perform these preliminary requirements, that the title to the land attempted to be conveyed by said deed remained in the said trustee, and his successors in office, until March 1, 1881, when, by virtue of an act of the state legislature, of that date, the legal title vested in the city of Pueblo, in trust for the community at large, and that it is still in said city.

The cross-complaint sets up no title under the patent of the United States, and no claim as a beneficiary of the trust vested in the county judge and his successsrs in office. The equitable right claimed by the defendant is the right to purchase the lot in controversy when it shall be appraised and offered for sale by the city of Pueblo, under the provisions of the state statute of March 1, 1881. The right to so purchase is based upon the defendant's

entry into possession of the property prior to the passage
of the said last-mentioned act, and the continuance of
said possession every since, together with the making of
valuable improvements thereon.   There is no allegation
that the city of Pueblo has taken any steps to set aside
the conveyance of the trustee to Robinson, or that it
claims any rights in the lands described in that deed.
Whether the title was rightfully conveyed to Robinson is
a question for the town of Pueblo, and not for the defend-
ant.    The demurrer to the cross-complaint was therefore
properly sustained.    *City of Denver v. Kent,* 1 Colo. 337,
345; *Cook v. Rice,* 2 Colo. 136, 137; *Smith v. Pipe,* 3 Colo.
187, 198; *Leroy v. Cunningham,* 44 Cal. 600; *Naglee v.
Palmer,* 50 Cal. 642; *McCreery v. Sawyer,* 52 Cal. 257;
*Palmer v. Galvin,* 13 Pac. Rep. 476; *Sherry v. Sampson,* 11
Kan. 611; *Jackson v. Winfield Town Co.* 23 Kan. 542.

The doctrine of this court, as established by repeated
decisions, is that when a trustee, in whom is vested,
under the law of congress and by patent from the United
States, the lands comprising a town site, to be held in
trust for the use and benefit of the occupants thereof, has
executed a deed of a parcel of such land to one claiming
to be a beneficiary of the trust, the legal title of such
parcel passes out of the trustee, and vests in the grantee;
also that no individual, not then a beneficiary of the
trust and interested in said land, is thereafter in a posi-
tion to question, in his own right, the validity of such
conveyance; nor can any one, by subsequent intrusion
upon the possession of the holder of the legal title, under
any pretense, acquire a right to inquire into and litigate
the question, either at law or in equity, whether all the
preliminary steps required by the local law were taken
by the party whom the trustee recognized as a beneficiary
under the law, and to whom he conveyed the fee.    The
allegations of the cross-bill afford the defendant no stand-
ing in equity, since he states no case entitling him to
impeach the conveyance from the trustee to Robinson,

through whom, by intermediate conveyances, the plaint-
iff derived his title.

The second ground of error assigned is based upon the
proposition that, from the date of the issue of the gov-
ernment patent, August 5, 1869, up to and including the
date of the county judge's deed to Robinson, December
5, 1870, the trustee named in the patent, and his succes-
sors in trust, were wholly without authority to execute
the trust with which they successively became invested,
in any manner or to any extent; that the act of congress
of March 2, 1867, required that the local legislature
should prescribe rules and regulations for carrying said
act into effect; and provided that any act of the trustee
not made in conformity to such regulations should be
void, and that no such law had been provided.

When the plaintiff offered to introduce in evidence, on
the trial below, the Robinson deed as the foundation of
his title, it was objected that the instrument was void
*ab initio*, and the foregoing reasons were urged in sup-
port of the objection. This assignment raises the ques-
tion whether any territorial law was in force at the date
of the conveyance to Robinson, prescribing rules and
regulations for the execution of the trust, and authoriz-
ing the trustee to execute conveyances. The original
town-site act, passed by congress on May 23, 1844, was
repealed July 1, 1864. Prior to its repeal, to wit, March
11, 1864, the territorial legislature passed an act provid-
ing the necessary rules for carrying into effect all trusts
arising under it in the territory of Colorado. Laws 1864,
p. 139. Subsequent to the passage of the congressional
law of March 2, 1867, the territorial legislature, on Jan-
uary 10, 1868, repealed the legislative act of March 11,
1864, on the same day substituting therefor an act sub-
stantially similar in form and substance. See R. S. 1868,
pp. 619, 690.

The latter act was in force at the time of the entry of

the Pueblo town site, at the date of the issue of the patent therefor to County Judge Bradford, and at the date of the execution of the deed by his successor in trust, County Judge Hepburn. But it is objected that this territorial law of January 10, 1868, was of no force, for the reason that it makes provision for the execution of trusts arising under the congressional act of May 23, 1844, long since repealed, and contains no allusion to the congressional act of March 2, 1867, under which the town site in question was entered and patented. It is true, the last-mentioned act of congress is not accurately described therein; but no one can read this law without experiencing a conviction of the legislative design to make the necessary provisions for executing the trusts created under and by virtue of said congressional act. It was the only territorial law on the subject of the entry of town sites on the public lands at the date of its passage, and, unless it can be fairly held applicable to the existing legislation on the subject, it must be treated as practically a dead letter. The latter view of a statute is never to be favored, if a more just and reasonable interpretation be admissible under well-established rules of law,— an interpretation which will not only sustain the statute, but preserve the rights which have accrued under it.

The supposed fatal objection interposed to the legislative act of January 10, 1868, consists, as we think, of a mere *misdescription*, or *false description* of the law of congress of March 2, 1867. The phraseology employed is as follows: "When the corporate authorities of any town, or the judge or judges of the county court for any county, in this territory, shall have entered at the proper land office the land, or any part of the land, settled and occupied as the site of any such town, pursuant to and by virtue of the provisions of the act of congress, entitled 'An act for the relief of citizens of towns upon lands of the United States, under certain circumstances,' passed

May 23, A. D. 1844, and any amendments that may be made thereto."

The Colorado legislature has, in several instances, taken the view that the congressional statute of May 23, 1844, being the original town-site act, all subsequent acts on the same subject are amendments thereto. This was the view taken in the territorial act of March 11, 1864. It made provision for the execution of all town-site trusts arising under the act of congress approved May 23, 1844, " and any amendments that may be made thereto." The same provision, as we have seen, appears in the revision of 1868, and the same description of the congressional law is given in the act of March 1, 1881, which repeals the law of 1868, and substitutes a new statute in its stead.

An inspection of the successive acts of congress upon the subject of town sites shows that those passed subsequent to May 23, 1844, are practically amendments of the original act. But since that act was repealed, as before stated, it is not accurate or proper to so describe them. Hence the territorial act of 1868 *misdescribes* the congressional act of March 2, 1867, under which the town site of the town of Pueblo was entered. Does this error or inaccuracy of description nullify the law, as claimed· by the defendant? The rule of law applicable to an error or inaccuracy of description is: " The maxim, *falsa demonstratio non nocet,* applies to statutes as well as in other cases. * * * So, when a statute is referred to by general descriptive particulars, some of which are manifestly false and others true, the former may be rejected as surplusage, provided the remainder is sufficient to show clearly what is meant." Sedg. St. & Const. Law, 354, 355.

A general rule of statutory construction, but liable to abuse without qualification, is that the intent of the legislature, if it can be ascertained, is to govern. More ac-

curately expressed, the rule is that "effect shall be given to the intention, whenever such intention can be indubitably ascertained by permitted legal means." Another statement of the rule is "so to construe statutes as to meet the mischief, to advance the remedy, and not to violate fundamental principles." Dwar. St. 181, 184, and note. Vattel says: "That must be the truest exposition of the law which best harmonizes with its design, its objects, and its general structure." Among other well-established rules of construction are these: That statutes are to be construed with reference to the objects to be accomplished by them, and with reference to the circumstances existing at the time of their passage, and the necessity for their enactment. Where a statute would operate unjustly, or absurd consequences would result from a literal interpretation of terms and words used, the intention of the framers, if it can be fairly gathered from the whole act, will prevail.

Let the foregoing principles be applied to the exposition of a local statute of the character now under consideration. Congress passes a law for the relief of a certain class of citizens of the states and territories. Some of these citizens are, at the time of its passage, and others afterwards become, entitled to valuable property rights under this act. Former acts of the same character have existed, but they have been repealed, and the act in question becomes the foundation of such existing and accruing rights. But this act requires local legislation, supplementary thereto, to carry its remedial provisions into effect. Subsequent to the passage of this act, the territorial legislature has passed the requisite supplemental statute, providing the necessary mode and means of carrying into effect the act of congress. Among other things, it specifies what acts shall be performed by the local corporate or judicial officers, as the case may be, in order to obtain from the general government the title of the property to which certain of its citizens have or shall

become entitled under the act of congress. This local law prescribes the acts necessary to be performed by beneficiaries of the trust, in order to obtain conveyances of their several lots and parcels of land, the titles of which are vested in the trustee. Every rule and regulation required by the act of congress is embodied therein. In respect to certain preliminary steps necessary to be taken by the beneficiaries, the precise number of days within which these acts must be performed after publication of notice by the trustee that the town site has been entered is specified in the law. Although this is the only local law or supplementary act to the law of congress, and although its provisions are prospective, still it is strenuously contended by counsel for defendant that it is no law at all on account of the misdescription mentioned.

As against this view are the legal principles above stated. The structure and provisions of the act also show it to have been the intent and purpose of the legislature to provide therein the rules and regulations required by the congressional act of March 2, 1867, for the execution of trusts arising under it. The same purpose is indicated by the circumstances existing at the time of its passage, the objects to be accomplished by it, the necessity for the law, and the unmistakable internal evidence furnished by the context and subject-matter of the act itself. The intention of the legislature being thus clearly ascertained, the validity of the statute is established by well-settled rules of construction, and the only duty remaining for the court to perform in this behalf is to execute the legislative will.

The objection of the quantity of land conveyed by the Robinson deed is not available in this action. *Smith v. Pipe,* 3 Colo. 198.

The ruling to the district court in the admission of the deed from Hepburn, county judge, to Robinson, of date December 5, 1870, was correct.

Several errors are assigned upon the admission by the

court of oral testimony to identify the tract of land described in the Robinson deed. The position of appellant's counsel is that this deed contains two descriptions of the land intended to be conveyed, — one by way of reference to the recorded plat of the town, the other by metes and bounds. They contend that the only evidence necessary to ascertain definitely the boundaries of the land conveyed was the *first description* and the plat referred to in the deed; that the admission of the *second* description, by metes and bounds, was unnecessary, and liable to ·create a conflict as to the identity of the tract. We have carefully examined the entire evidence on this subject, and are compelled, in view of the facts and circumstances of the case, to reject this position as unsound. The land conveyed by County Judge Hepburn to Robinson is thus described in the deed: "* * * Grant, bargain and sell unto the said James G. Robinson the following lot of land, situate, lying, and being in the town of Pueblo, county of Pueblo, and territory of Colorado, and designated on the recorded plat of said town *as the vacant land formed by the change of the bed of the Arkansas river*, and bounded as follows, to wit: Commencing where the east line of Court street leaves the south line of the town of Pueblo, and running north along said line to the alley in block thirty-one (31); thence east, along said alley and the south line of M. McCarty, in block thirty-two (32), to Santa Fe avenue; thence south to the Arkansas river; thence up said river to where it is intersected by the south line of the town; thence along said line to the place of beginning, and *not interfering* with the *plan* of the *streets* and *alleys adopted in town plat in my office.*"

Appellant's counsel persistently objected on the trial to the admission of parol evidence to identify the land described in the Robinson deed; one ground of objection being that the plat referred to in the deed became by reference a part of the deed, and that parol proof of the

identity of the land conveyed was incompetent until the plat should be first produced. We think this objection should have been sustained, and the plaintiff required to either produce the plat or show that it was not in his power so to do. This would have been the proper order of proof on part of the plaintiff. The plaintiff finally introduced considerable proof going to show that the plat referred to in the deed was not in the county clerk's office, and had not been for several years, nor any record of it. A copy of the original, however, was produced by the witness Fosdick, who made the original for the use of Judge Bradford at the time of the entry of the town site. Witness testified that it was a correct copy of the original, and had not been out of his possession since it was made, in March, 1869. There was likewise another plat of the town produced and examined by the court and counsel, bearing the same date, and made by the same person.

The appellant raises the rather technical point that these plats were not introduced in evidence. But, in respect to all these objections, when it is considered that the trial was to the court without a jury, and that both court and counsel examined these plats on the trial; that they were marked as exhibits, and copies of them attached to the record; also that the trial judge found that the plat produced by the said witness Fosdick was a true copy of the original town plat referred to in said deed, and that the original was lost, and could not be produced,— we are of opinion that no error, prejudicial to the substantial rights of the appellant, was committed.

In reference to the objection that parol testimony was not admissible to identify the land, it is wholly untenable. *Pipe v. Smith,* 4 Colo. 444. The copy of the original *town-site plat,* as well as the certified copy of the plat of same date, fail to satisfy the so-called *first* description of the deed, to wit: "*And designated on the recorded plat of said town as the vacant land formed by*

*the change of the bed of the Arkansas river.*" No tract
of land so "*designated*" appears on either of these plats.
But, even if it did, the "*vacant land*" having been
formed by the change of the river twelve years prior to
the trial, great changes may have occurred in its bound-
aries since that time by subsequent changes in the bed
of the river.

Respecting the so-called *second* description, it was
clearly admissible. The only objectionable feature about
it is the misdescription of one call, which is a mistake so
patent as not to raise a doubt as to the course intended.
After describing a course north on the east line of Court
street, to the alley in block 31, then an east course along
that alley and a certain strip of land, a distance of two
blocks is described reaching to Santa Fe avenue. This
course is described thus: "*Thence east along said alley,
and the south line of M. McCarty,* in block thirty-two
(32), to Santa Fe avenue." The error is in the number
of the latter block, stating it as number "*thirty-two,*"
whereas the block lying directly east of block thirty-one,
and on a true line to Santa Fe avenue, is block *thirty.*
The course described follows the entire length of block
*thirty-one,* on the alley, and, continuing in the same di-
rection, enters the alley in block *thirty.* This alley is
not platted entirely through the latter block, and the oral
evidence shows that the south line of the land of McCarty
diverged from the alley to the southeast, causing the
same divergence of the survey in question, but that the
line closed on the avenue mentioned. Block *thirty-two,*
on the contrary, lies directly north of block thirty-one,
and cannot be reached on the line described. Neither
did McCarty own any land in that block, while he did
in block *thirty.* It is clear that the words "thirty-two"
are inconsistent with the other calls mentioned in the
boundaries described; and it appearing that the remain-
ing particulars, descriptive of the land mentioned in the

deed, are sufficiently certain, the call for block *thirty-two* will be rejected.

In our judgment there is but *one description* of the premises granted inserted in the deed in question. The first portion thereof merely indicates the *situs* of this vacant tract, while the *latter* limits its extent, and defines its boundaries. There was no error in admitting the entire description in evidence, and no error in admitting oral testimony to identify the land. The very means by which it was formed show the necessity for such testimony.

We have not considered the effect of the *curative statutes* and *deeds*, considering them unnecessary to the determination of the merits of the controversy.

The judgment is affirmed.

*Affirmed.*