CHEVER V. HORNER ET AL.

1. Where a deed, executed by a probate judge under act of Colorado of March 11, 1864, regulating the entry and conveyance of town-sites as provided in acts of congress of May 23, 1844, and May 28, 1864, authorizing the entry of town-sites in trust for the benefit of occupants, recites that entry and conveyance was made under authority of law, and that the grantee was entitled to the land, and the improvements thereon, such recitals are sufficient to raise a presumption that the preliminary requisites of law have been complied with, and the deed is not open to attack for defects or omissions in the initiatory proceedings, in an action of ejectment brought by one holding a subsequent deed from the probate judge.

2. Where the finding and judgment, in an action of ejectment, in effect, are that plaintiff had neither title nor right of possession, an irregularity as to the form of the judgment is without prejudice to the plaintiff.

*Appeal from Arapahoe County Court.*

CHARLES G. CHEVER, appellant, brought an action at law against the defendants, Henry E. Rogers and John W. Horner, for possession of lot 10, block 176, in the east division of the city of Denver, claiming ownership in fee-simple. The complaint alleged that Rogers wrongfully withheld possession from the plaintiff, and that Horner claimed title adversely to him. The defendants filed separate answers, Rogers saying he could not obtain information sufficient to form a belief whether the

plaintiff was seized of any estate or interest in the lot; and Horner averring ownership in fee-simple in himself, that Rogers was his tenant, and traversing the rights claimed by the plaintiff. The replication denied the rights and title claimed by Horner. The property in controversy constitutes a portion of the original townsite of the city of Denver, entered by James Hall, probate judge of Arapahoe county, May 6, 1865. The entry was made under and by virtue of the acts of congress of May 23, 1844, and May 28, 1864 (5 U. S. Stat. at Large, 657; 13 U. S. Stat. at Large, 94), "in trust for the several use and benefit of the rightful occupants and *bona fide* owners of the improvements." Upon the trial in the district court the plaintiff proved that he had filed upon the lot in question, in the office of the probate judge, on the 7th day of August, 1865. He also introduced in evidence a deed for said lot, dated May 8, 1875, from William C. Kingsley, probate judge of Arapahoe county, to himself. Defendant Horner introduced in evidence, to establish his title to the lot in controversy, a deed from Probate Judge Downing to John Hughes, bearing date October 24, 1867. This was followed by a deed from John Hughes to the defendant of an undivided half of said lot, dated November 26, 1870, and a decree of the district court of Arapahoe county, in partition proceedings, made and entered at the April term of 1877, vesting the other undivided half thereof in said defendant. On rebuttal the plaintiff offered to prove that Hughes, grantee of Probate Judge Downing, never filed upon the lot as required by the territorial act of 1864; that at the time of the execution of Judge Downing's deed to him there were two filings upon the lot, one by the plaintiff, and the other by one John M. Veasey; also that Hughes was not a beneficiary under the trust created by the acts of congress; that he was not an occupant, or entitled to possession of the lot in controversy, and had no improvements thereon. Plaintiff also offered to prove that on

the 23d day of May, 1873, he was in possession of the lot, and that on the 30th day of the same month the defendant Horner broke through the fence, moved a frame house upon the lot, and took possession thereof. These offers of proof were all rejected by the court, exceptions being reserved by the plaintiff. The act of congress of May 23, 1844, authorizing the entry of town-sites in trust for the use and benefit of the occupants, required the trust to be executed in respect to the disposal of lots, and the proceeds of sales thereof, according to such regulations as might be prescribed by the legislative authority of the state or territory in which the town-site was situated; and it also provided "that any act of said trustees not made in conformity to the rules and regulations herein alluded to shall be void and of none effect." The congressional act of May 28, 1864, entitled "An act for the relief of the citizens of Denver, in the territory of Colorado," extending the provisions of the former act to specific subdivisions of land, provided "that in all respects, except as herein modified, the execution of the foregoing provisions shall be controlled by the provisions of said act of 23d of May, 1844, and the rules and regulations of the commissioner of the general land office." The territorial legislature, by an act approved March 11, 1864, prescribed rules and regulations for the execution of the trust arising under the former act, and by operation of law they were equally applicable to entries made under the latter act.

Messrs. J. Q. CHARLES and H. C. DILLON, for appellant.

Messrs. J. W. HORNER and LUCIUS P. MARSH, for appellees.

BECK, C. J. In construing the foregoing statutes this court has held that the execution and delivery of a deed to a portion of the Denver town-site, by a probate judge, acting under and by virtue of these statutes, was anal-

ogous to the granting of a patent by the land department
of the government, and that the same presumptions in
favor of the regularity of such deed exist as in the case
of a patent issued by the government. It has long been
a settled doctrine that a government patent cannot be
impeached collaterally, nor the regularity of the proceed-
ings anterior to its issue called in question in an action at
law, where the land department of the government had
jurisdiction to dispose of the land. The adjudications of
the supreme court of the United States upon this point
are reviewed in *Anderson v. Bartels*, 7 Colo. 256, a case
substantially similar to that here presented, and which
we think conclusive of most of the questions raised by
the assignment of errors in this case. It was there held
that the conclusive presumptions attaching to a patent
were applicable to the deed of a probate judge, assuming
to act under and by virtue of the United States and terri-
torial town-site statutes. One of the positions assumed by
appellant's counsel is that the present case should be dis-
tinguished from the *Anderson Case*, because its essential
facts are different, and for the reason that the questions
of law involved did not arise in the former case. We
reply that the controlling legal proposition is the same in
both cases, viz., Can the prior deed executed by the pro-
bate judge be collaterally impeached by proof that certain
preliminary requisites of the law have not been complied
with? In the former case this question was determined
in the negative. Why should it be determined differ-
ently in the present case? The principal reasons assigned
are that the deed sought to be impeached in the former
case, that from Probate Judge Downing to Foy (through
which, by mesne conveyances, defendant Caroline E.
Downing deraigned title), was based upon a filing made
in accordance with the territorial act of March 11, 1864,
while no such proof was made in support of the Hughes
deed in the present case; and plaintiff offered to show that
no filing had been made by Hughes. While the fact that

Foy had made such filing was disclosed by the record in the former case, it was not a controlling fact in the decision. The doctrine announced was that the deed upon its face purported to have been issued in pursuance of the law, and was therefore only assailable in a direct proceeding to set it aside. Another proposition insisted upon is that it was admissible to attack the Hughes deed for fraud in its execution, and for this purpose the offer to prove that Hughes had never filed upon the lot in question should have been allowed. The fraud alluded to is imputed to the probate judge. The language of counsel is: "That the action of Downing in issuing the deed in question to Hughes was a fraud upon the rights of the plaintiff in this case will hardly be questioned." Whether this charge be true or not, the proposition that upon this ground the validity of the deed was examinable, in an action of this character, is in conflict with the leading cases on the subject. .

The doctrine is established by numerous decisions of the supreme court of the United States that, should the officers of the land department, in issuing a patent, err in respect to their duty or as to questions of fact or law, or even act from corrupt motives, the patent cannot be collaterally attacked for such cause, if, upon any state of facts, the patent might have lawfully issued; and that against collateral attack it will be presumed the necessary facts existed. Parties aggrieved by such error or fraud must resort to a direct proceeding to set aside the patent. *Smelting Co. v. Kemp,* 104 U. S. 636; *Johnson v. Towsley,* 13 Wall. 72–83; *Moffatt v. United States,* 112 U. S. 34; 5 Sup. Ct. Rep. 10.

It is held in *Field v. Seabury,* 19 How. 323–333, that when a patent has issued without any provisions incorporated for inquiring into its fairness as between grantor and grantee or between third parties, a third party cannot raise, in ejectment, the question of fraud as between the grantor and grantee, and thus look beyond the patent.

This case declares that a patent cannot be collaterally avoided at law for fraud, and that the court had never declared it could be done. A third proposition is that the case comes within the two exceptions to the rule of conclusive presumptions mentioned in the *Anderson Case;* the first being, when there is a contest between two patentees for the same land, that a patent takes effect from the date of the original proceedings to obtain title, and in such case they are referred to for the purpose of ascertaining which of the contestants took the first steps; the other instance being under a statute declaring a patent void where no entry as an initiatory proceeding had been made.

These exceptions require explanation. In a contest between two patentees, concerning the same tract of land, where the patents were issued by the land department of the government under the general land laws thereof, and the land in dispute was subject to entry and sale, the exception only applies to cases arising under certain state statutes which authorize such an inquiry into the prior equities in an action at law. It is not a general exception. The exception also applies in the earlier patent issued without jurisdiction, as if the land was not then the property of the United States, or was not open to entry and sale. Another exception, and the one upon which the most of the cases cited by the appellant are based, relates to patents issued by the government for lands in California, under the treaty of 1846 with Mexico, and the congressional act of 1851, passed in aid thereof. This exception will be explained hereafter. As to the second class of exceptions, also arising under special statutes, the rule announced in the above-mentioned case was, if the patent is silent on the subject it is competent to show the initiatory steps were not taken at all. The rule contended for under this third proposition is that the filing upon a lot by a claimant, made in the office of the probate judge, in pursuance of

the territorial act of March 11, 1864, was the equivalent of an entry of land in a government or state land office; that, as between conflicting claimants for the same lot, the party making the earlier filing, although holding the junior deed, is entitled to recover by virtue of the doctrine of relation, as "where two patents have been issued by the United States for the same property, and the junior conveyance, by relation, has been held to convey the superior and better title." When two patents for the same tract of land are issued by the government, while the first patent conveys the legal title, the second may convey the equitable and better title. But the courts of the United States do not hold that the equitable title shall prevail in an action at law, save in the excepted cases mentioned. It was so held in *Ross v. Barland*, 1 Pet. 655, but the reason assigned by the court was that the cause originated in the state of Mississippi, where, according to the peculiar mode of proceeding in actions of ejectment, the courts "look beyond the grant, and examine the progressive stages of the title from its incipient state * * * until its final consummation by grant; and if found regular, and according to law, in these progressive stages, the grant is held to relate back to the inception of the right, and to have dignity accordingly." In such a case the correctness of the practice, as established by the courts of the state, could not be examined on writ of error to the supreme court of the United States, as stated in the syllabus of the case. The court, however, said: "Upon common-law principles, the legal title should prevail, in the action of ejectment, upon the same grounds that the legal right prevails in other actions in courts of law." This case is therefore not in point, since the practice mentioned does not prevail in this state. The case of *Sherman v. Buick*, 93 U. S. 209, was a contest at law between two patentees who claimed the same tract of land, the plaintiff by a patent from the United States, and the defendant by a

patent issued by the state of California. The plaintiff
held the junior grant, and it was held proper for him to
introduce evidence of his prior entry, not for the purpose
of impeaching or contradicting the state patent, but for
the purpose of showing that when the state of California
made her conveyance she had no title to the land. This
case, therefore, fell within another exception. The same
character of testimony was held admissible, for the same
purpose, in *Polk's Lessee v. Wendal*, 9 Cranch, 87, a case
strongly relied upon by the appellant in the present ac-
tion. The plaintiff's title rested upon a patent issued by
the state of North Carolina, regular in all respects. The
defendant relied upon an earlier patent issued by the
same state, purporting to convey the same lands. The
lands in controversy comprised a portion of a tract of
territory which had been ceded by the state of North
Carolina to the government of the United States many
years prior to the issuing of either patent. At the time
of the cession the right was reserved by the state to per-
fect incipient titles. It did not appear on the face of the
defendant's patent that an incipient title had accrued
prior to the cession, and the state authorities had not
jurisdiction to make a grant upon rights claimed to have
accrued afterwards. On this point the court say: "After
the cession the state of North Carolina had no power to
sell an acre of land within the ceded territory. No right
could be acquired under the laws of that state." Page
284.

The patent in the above case purported to have been
made by virtue of certain warrants founded on entries.
The plaintiff offered to prove that these entries were
never made and that the warrants were forgeries. This
evidence was excluded at the trial by the district court of
the United States, but held to have been admissible by
the supreme court on the principle announced in both
this and the previous case, that the object of the testi-
mony was to show that the state had no title to the thing

granted, and consequently acted without jurisdiction. If, as the court says, these warrants had no existence at the time of the cession, and no entries had been made, the grantee had no incipient rights. The patent being silent on this point, and there being a state statute requiring an entry to be made, and declaring void all patents issued in violation of its provisions, the case comes clearly within both classes of exceptions referred to in the *Anderson Case*. These are the only classes of cases found by us where unconditional patents have been held open to examination at law. The doctrine of relation, so earnestly insisted upon by counsel for appellant, as applicable to the case before us, has frequently been applied in equity, and has likewise been applied under peculiar systems of procedure, as in the Mississippi case. There are other instances, however, than those above given, wherein it has been held proper in contests between patentees for the same land in legal actions to show "that a junior patent was founded upon an earlier entry than the older patent, and therefore passes the title." Most of the cases cited on part of the appellant have been of this character. These cases have arisen, as above stated, under treaty stipulations with Mexico, by virtue of which the territory embraced within the state of California was ceded to the United States, and under the act of congress of March 3, 1851, passed to ascertain and settle the private land claims in that state. By the treaty of cession the property rights of the inhabitants were to be protected to the same extent as under the former government. The act of congress specified the manner and terms on which these treaty obligations would be discharged. All claims to land were to be presented, within two years from the date of the act, to a board of land commissioners for investigation, or to be treated as abandoned. The claims were to be supported by evidence furnished by the claimants, and government officers were to appear and contest on behalf of the United States.

Appeals were authorized from the land board to the district court of the United States, and thence to the supreme court. Upon confirmation of a claim by this special tribunal, or on appeal, the land was to be surveyed and located, and upon approval of the survey by government officers a patent issued from the United States to the claimant. As to the effect of the patent when issued it was held to operate as a relinquishment to the patentee of all interest of the United States in the land granted thereby, and to be an official declaration that the claim was valid under the laws of Mexico, and entitled to recognition under the treaty stipulations. As to claims to these lands made by other parties after the cession of the territory to the United States the patents are held conclusive, and to take effect by relation at the time proceedings were instituted before the board of land commissioners by the parties whose rights were acquired under the Mexican government. They are held to convey to the patentee the legal title, and to be conclusive in actions of ejectment as against all persons asserting imperfect or equitable titles, or interests acquired after the cession of the territory. This class of patents, however, reserves the rights of " third persons," in accordance with the provision of the act of March 3, 1851, that the final decree of confirmation and patent shall be conclusive between the United States and the claimants only, and shall not affect the rights of third persons. The third persons intended were held to be those whose rights were acquired under the former government.

We are of opinion that the adjudications of the state and federal courts, upon patents issued by the United States for lands in California claimed under Mexican and Spanish grants, do not furnish a correct rule for the interpretation of a deed to a parcel of land in the Denver town-site, executed by a probate judge, under and by virtue of the acts of congress and of the territorial legislature relating to that subject. The statement in the

*Anderson Case* that a deed executed by the probate judge is analogous, in effect, to a patent granted by the government, had reference to patents for lands of the United States issued by the land department under the public land laws of the government. The adjudications upon patents issued upon Mexican grants were necessarily variant from those made in cases arising under the public land laws. The laws, the principles involved, and the systems of procedure in the two cases, are essentially different. In one case the patents, when regularly issued, are conclusive in actions at law of the rights of all persons. In the other, although the proceedings may be entirely regular, yet there is a reservation to those who may be able to show superior rights. For these reasons the latter class of cases cannot control the construction of conveyances of the character under consideration. The decisions in the former class, in so far as they relate to the effect and conclusive character of patents made under systems of procedure similar to our own, or in accordance with common-law principles, are recognized authority in the construction of these deeds. Under the acts of congress above mentioned, and the provisions of the act of the territorial legislature in aid thereof, the probate judge, holding the title to the town-site in trust for the beneficiaries, was authorized to convey the lots and parcels of land therein to those entitled to the same. This was a general jurisdiction over the subject-matter, analogous to the jurisdiction of the land department of the government over the issuing of patents to lands subject to entry under the land laws of the United States. Being invested with title and jurisdiction, Probate Judge Downing conveyed the lot in controversy to John Hughes, from whom appellee Horner deraigned title more than seven years prior to the conveyance by his successor, Judge Kingsley, to the appellant Chever. If, then, the deed from Judge Downing to Hughes is regular upon its face, and purports to have been executed in pursuance of

the authority vested in the grantor, it is not open to attack in this collateral proceeding for defects or omissions in the initiatory proceedings. Referring to the copy of the deed set out in the transcript, the deed itself is shown to contain the recitals of the entry of the town-site by Probate Judge James Hall; that for more effectually carrying out the trust secured by the act of congress he conveyed by deed to his successor in office, Omer O. Kent, "all portions and lots of land not heretofore conveyed by him in accordance with said trust;" that said Omer O. Kent conveyed by deed to his successor in office, Jacob Downing, to effectuate the same purposes, "all portions and lots of land not heretofore conveyed by him in accordance with said trust." It also contains these further recitals: "And, whereas, the said party of the second part is justly entitled to the lots and parcels of ground hereinafter described as the rightful occupant thereof, and the *bona fide* owner of the improvements thereon, under the provisions of said act of congress; now, therefore, in consideration of the premises, and the sum of $1, by the party of the second part, in hand paid to the said party of the first part, under and by virtue of the act of congress aforesaid, and the laws of the territory of Colorado, the said party of the first part doth hereby grant and convey unto the said party of the second part," etc.

It is seen from these recitals that the deed is neither void upon its face nor silent as to the authority of the officer to execute it. They are sufficient, under the principles announced, and the authorities cited in support thereof, to raise the presumption, in an action of this character, that the necessary initiatory steps were taken in conformity with the law.

Respecting the error assigned as to the form of the judgment, the irregularity complained of is in no manner prejudicial to the appellant.

The effect of the finding and judgment is that in so far as this action is concerned he had neither title nor right of possession. The judgment is affirmed.

*Affirmed.*