JOHN H. GREEN V. JOSEPH BARKER ET AL.

FILED APRIL 10, 1896.   No. 5888.

1. Patent for Land: COLLATERAL ATTACK: EVIDENCE.  The
   presumptions arise from the existence of a patent evi-
   dencing a grant of land from the United States, that all
   acts have been performed and all facts have been shown
   to exist which are prerequisites to its issuance, and that
   the right of the party grantee therein to have it issue
   has been presented to and passed upon by the proper
   officers; and such patent is not open to collateral attack.

2. Deeds: TOWN SITE ACT: EVIDENCE: EJECTMENT.  Where
   property has been conveyed under the provisions of the
   act of congress of May 22, 1844, which may be termed
   the "Town Site Act" (see 5 United States Statutes at
   Large, 657), by the United States to the corporate au-
   thorities of a town or city, or a trustee designated by
   law, a deed executed by the trustee or the party author-

ized by law to make the transfer, evidences the determination, by the party executing it, that all the preliminary steps have been taken and necessary requirements complied with, and that the person to whom the deed runs is the one entitled to receive it, and the question of the validity of the deed cannot be litigated in a collateral proceeding.

3. Office and Officers: EVIDENCE. It is a presumption of law that every person performs his duty as an official until the contrary is shown.

4. Deeds: ERRONEOUS REFERENCE TO STATUTE. A correct designation, in a deed, of the legislative act under and by virtue of which it was executed, *held*, not essential to the validity of the deed.

5. Evidence: RECORDS: IDENTIFICATION. A page of a book was identified as a part of the records of the minutes of the meetings of the "Grandview Company." *Held*, Not an identification or foundation for its introduction as showing proceedings had by the board of trustees of the "City of Grandview."

6. Deeds: EXECUTION BY TRUSTEE OF CITY: EVIDENCE: EJECTMENT. Deeds were executed purporting to be conveyances of real property by the trustees of the city of Grand View, which were signed "A. B. Moore, chairman." *Held*, That without proof that A. B. Moore who signed the deeds was chairman of the board of trustees of the city of Grand View, the deeds did not evidence the transfer purported to be made.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J.

*C. A. Baldwin* and *James M. Woolworth*, for plaintiff in error.

References: *Mattis v. Boggs*, 19 Neb., 698; *United States v. Southern Colorado Coal & Town Co.*, 18 Fed. Rep., 273; *Abbott v. Omaha Smelting Co.*, 4 Neb., 418; *Morrill v. Taylor*, 6 Neb., 242; *Doody v. Vaughn*, 7 Neb., 31; *Robinson v. Mathwick*, 5 Neb., 255; *Irving v. Brownell*, 11 Ill., 402; *City of St. Louis v. Gor-*

*man,* 29 Mo., 593; *Sioux City & P. R. Co. v. Washington County,* 3 Neb., 41; *Murphy v. Lyons,* 19 Neb., 691; *McGavock v. Pollack,* 13 Neb., 535; *Williams v. Lowe,* 4 Neb., 396; *Atkins v. Atkins,* 9 Neb., 202; *Yates v. Lansing,* 9 Johns. [N. Y.], 437; *Reynold v. Stansbury,* 20 O., 353; *Bloom v. Burdick,* 1 Hill [N. Y.], 130; *Burbank v. Ellis,* 7 Neb., 156; *Clark v. Titus,* 11 Pac. Rep. [Ariz.], 312; *Mills v. Paynter,* 1 Neb., 445; *Sumner v. Stevens,* 6 Met. [Mass.], 337; *Cooper v. Ord,* 60 Mo., 420; *La Frombois v. Jackson,* 8 Cow. [N. Y.], 611; *Field v. Boynton,* 33 Ga., 239; *Hannibal & St. J. R. Co. v. Clark,* 68 Mo., 371; *Lea v. Polk County Copper Co.,* 21 How. [U. S.], 494; *Rawson v. Fox,* 65 Ill., 200; *Wells v. Jackson Iron Mfg. Co.,* 47 N. H., 253.

*H. D. Estabrook* and *Edward W. Simeral, contra.*

References: *Field v. Seabury,* 19 How. [U. S.], 324; *St. Louis Smelting & Refining Co. v. Kemp,* 104 U. S., 637; *Taylor v. Winona & St. P. R. Co.,* 45 Minn., 66; *Cofield v. McClelland,* 16 Wall. [U. S.], 331.

HARRISON, J.

The defendants in error instituted this, an action of ejectment, in the district court of Douglas county against the plaintiff in error. The petition filed was as follows: "And now come said plaintiffs and for cause of action against said defendant say: That said plaintiffs, as tenants in common with said defendant, have a legal estate in, are the owners in fee, and entitled to the immediate possession of the undivided interests hereinafter appearing of the following described real property, to-wit: The block or tract of ground known as the Stone Quarry Reserve, in the city of

Grandview, Douglas county, Nebraska, and so designated upon the map of Omaha as lithographed and published by Poppleton & Byers. Said Joseph Barker being the owner in fee of 19-100 of said property; John I. Redick, 1-100; George P. Bemis, 2-100; Lewis S. Reed, 4-100; Ferdinand Streitz, 14-100; Andrew B. Moore, 14-100; said Emma I. Jones, as widow of Henry O. Jones, deceased, who died intestate and without issue, of a life estate of 13-100 of said property; and the said Dana G. Jones, Eva S. Jones, and Patty A. Holton as the owners in fee of the 13-100 interest; said last three named parties being the sole heirs at law of said Henry O. Jones, deceased. But the plaintiffs aver that said defendant unlawfully keeps them out of the possession of said property, and deny the rights of plaintiff herein set forth.    Wherefore plaintiffs ask judgment for the possession of the property and costs of suit." To this an answer was filed in behalf of plaintiff in error which first denied generally each and every allegation of the petition, also specifically traversed them and pleaded affirmatively as follows: "And further answering defendant says that this action ought not to be prosecuted against him, for the reason hereinafter stated, that is to say, that this defendant, and those under whom this defendant claims, have been in the actual, open, notorious, and hostile possession and occupation of said premises and all of it, claiming it as their own, for more than ten years next before the institution of this action. And the defendant pleads and relies upon the statute of limitation in such cases made and provided in bar of the plaintiffs' right of recovery herein; wherefore the defendant prays that he may be hence dismissed with judg-

ment for his costs in this action, and that he may have all other relief." To this there was a reply, a general denial. There was a trial before one of the judges of the district court and a jury, resulting in a verdict in favor of defendant in error as to the larger portion of the premises in controversy, upon which, after motion for new trial was heard and overruled, judgment was rendered. The case is presented here by error proceedings on behalf of the defendant in the trial court.

The defendants in error introduced in evidence a patent conveying from the United States to "The trustees of the city of Grandview, and as the proper corporate authority thereof, in trust for the several use and benefit of the occupants thereof according to their respective interests under said act of 23d May, 1844, and to their successors and assigns in trust as aforesaid," certain lands which included the tract in controversy in this case; also deeds signed by "A. B. Moore, chairman," and each containing a recital that it was the act of the trustees of the city of Grandview, by which there was purported to be conveyed certain undivided interests in the title to the Stone Quarry Reserve, together with other property, to parties who, according to the recitals of the deeds, had respectively become entitled to the conveyances; also conveyances from these last mentioned persons to others, and transfers were shown until the defendants in error had been reached, and the title to their respective interests vested in them. The several conveyances were objected to at the time they were offered in evidence. The trial judge instructed the jury in respect to the patent and deeds and what they established, as follows: "The plaintiffs have in-

troduced in evidence a patent from the United States to the trustees of the town of Grandview covering the premises in controversy, and claim title through conveyances received by them or their grantors from A. B. Moore, chairman of such board of trustees; and you are instructed that they have introduced record evidence showing a legal estate in themselves as set out in their petition, and are therefore entitled to recover, unless the defense of adverse possession has been established by the defendant." This was excepted to and is assigned for error.

In order to a proper understanding of the claims of plaintiff in error that the patent from the United States to the city of Grandview and the deed made by A. B. Moore, as "chairman," did not convey any title or were not evidence of such transfers, we deem it proper to set forth here portions at least of the act of congress to which allusion was made in the patent, and of the acts of the territorial legislature which were passed to carry into effect the law enacted by congress. The act of congress reads as follows: "Whenever any portion of the surveyed public lands has been or shall be settled upon and occupied as a town site, and therefore not subject to entry under the existing pre-emption laws, it shall be lawful in case such town shall be incorporated, for the corporate authorities thereof, and if not incorporated, for the judges of the county court for the county in which such town may be situate, to enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust as to the disposal of the lots in such town

and the proceeds of the sales thereof to be con-
ducted under such rules and regulations as may
be prescribed by legislative authority of the state
or territory in which the same is situated.   *Pro-
vided*, That the entry of the land intended by this
act be made prior to the commencement of the
public sale of the body of land in which it is in-
cluded, and that the entry shall include only such
land as is actually occupied by the town and be
made in conformity to the legal subdivisions.   *   *
*Provided, also*, That any act of said trustees not
made in conformity to the rules and regulations
herein alluded to shall be void and of none effect."
(5 United States Statutes at Large, ch. 17, p. 657.)
The territorial enactment to prescribe the rules
and regulations, which was passed February 10,
1857 (see Session Laws, 1857, p. 133), is as follows:

"Section 1. That whenever any portion of the
surveyed public lands has been or shall be settled
upon and occupied as a town site, and therefore
not subject to entry under the existing pre-
emption laws, it shall be lawful and be the duty,
whenever required by the occupants and owners
by deed of the lots within the limits of such town,
for the corporate authorities of the town, if incor-
porated, and if not incorporated, then for the com-
missioners for the county in which such town may
be situated   *   *   *   to enter at the proper land
office the land so settled and occupied as a town
site, in trust for the several use and benefit of the
occupants and those holding by deed or otherwise,
according to the laws of this territory.

"Sec. 2. After the purchase of such land as
above described it shall be the duty of the mayor
of the town, if incorporated, or if the town is not
incorporated, then of the commissioners of the

county in which the town is situate, to make out, execute, and deliver to each person who may be legally entitled to the same a deed in fee simple for such part or parts, lot or lots of such lands as each person may be entitled to."

Section 3 makes provision for hearing and determining disputes between contesting claimants. Sections 4 and 5 we need not notice here. Section 6 provided for an appeal to the proper district court from a decision of a mayor or the commissioners. In 1858 an act was passed on this same subject which repealed the act of 1857. (See Laws of Nebraska, 1858, p. 266.) In sections 4 and 5 of the law of 1858 it was provided:

"Sec. 4. After the entry of the land settled upon and occupied as a town site, as hereinbefore prescribed, the corporate authorities or the county judge, as the case may be, having entered the land, shall cause public notice to be given of the fact of such entry by posting written or printed notice in at least three public places in the town, and no deeds for the land nor any part thereof shall be executed and delivered within the period of thirty days after the first day of the publication of such notice.

"Sec. 5. After the lapse of thirty days from the first day of the publication of such notice, the mayor of the town, or if there is no mayor, the chairman of the board of trustees, if such town is incorporated, and if the town is not incorporated, then the county judge of the county wherein the town is situated, shall on demand execute and deliver to each person who may be legally entitled to the same a deed in fee simple for the part or parts, lot or lots of such land as the person demanding may be lawfully entitled to."

In regard to a patent issued by the proper offi-
cers of the United States, it was observed in the
case of *St. Louis Smelting Co. v. Kemp*, 104 U. S.,
636: "The execution and record of the patent are
the final acts of the officers of the government for
the transfer of its title, and, as they can be law-
fully performed only after certain steps have been
taken, that instrument, duly signed, counter-
signed, and sealed, not merely operates to pass the
title, but is in the nature of an official declaration
by that branch of the government to which the
alienation of the public lands, under the law, is
intrusted, that all the requirements preliminary
to its issue have been complied with. The pre-
sumptions thus attending it are not open to rebut-
tal in an action at law. It is this unassailable
character which gives to it its chief, indeed its
only value, as a means of quieting its possessor in
the enjoyment of the lands it embraces." (*Polk v.
Wendall*, 9 Cranch. [U. S.], 87; *Cofield v. McClelland*,
16 Wall. [U. S.], 331; *Moffat v. United States*, 112
U. S., 24, 5 Sup. Ct. Rep., 10.) The principle is also
recognized in *Van Sant v. Butler*, 19 Neb., 351.
The supreme court of Colorado has said on this
same subject: "The doctrine announced was that
the deed upon its face purported to have been
issued in pursuance of law, and was therefore
only assailable in a direct proceeding to set it
aside. Another proposition insisted upon is that
it was admissible to attack the Hughes deed for
fraud in its execution, and for this purpose the
offer to prove that Hughes had never filed upon
the lot in question should have been allowed. The
fraud alluded to is imputed to the probate judge.
The language of counsel is: 'That the action of
Downing in issuing the deed in question to

Hughes was a fraud upon the rights of plaintiff in this case, will hardly be questioned.' Whether this charge be true or not, the proposition that upon this ground the validity of the deed was examinable in an action of this character is in conflict with the leading cases on the subject.    The doctrine is established by numerous decisions of the supreme court of the United States that, should the officers of the land department, in issuing a patent, err in respect to their duty as to questions of fact or law, or even act from corrupt motives, the patent cannot be collaterally attacked for such cause, if upon any state of facts the patent might have lawfully issued; and that against collateral attack it will be presumed the necessary facts existed. Parties aggrieved by such error or fraud must resort to a direct proceeding to set aside the patent." (*Chever v. Horner*, 11 Colo., 72 and cases cited.)

It is settled doctrine, well supported by both authority and reason, that from the existence of the patent evidencing the grant the presumption arises that all the acts have been performed and all the necessary facts have been shown to exist by the party to whom it was made, which were prerequisites to its existence, and that the proper officers have examined and adjudicated the question of the right of the applicant, and the patent, the evidence of such determination, is unassailable collaterally.   The patent in this case ran to the trustees of the city of Grandview, and the deeds, purporting to convey title to the various claimants of lots and undivided interests in the "Stone Quarry Reserve," were signed "A. B. Moore, chairman." The recitals of these deeds, or such as we need notice, were as follows:

Green v. Barker.

"This indenture, made this fifth day of March, in the year of our Lord one thousand eight hundred and fifty-nine, witnesseth: That whereas the congress of the United States passed an act entitled 'An act for the relief of citizens of towns upon the lands of the United States, under certain circumstances,' approved May 23, A. D. 1844;

. "And whereas the legislative assembly of the territory of Nebraska, under and in pursuance of said act of the said congress, passed an act entitled 'An act regulating the disposal of lands purchased in trust for town sites,' approved February 10, A. D. 1857;

"And whereas the trustees of the city of Grandview have paid for and received a title from the United States in trust for the occupants and owners of the lots and pieces of land in the city of Grandview and territory of Nebraska, which city it located upon—[Here follows a description of the land]:

"Now, therefore, by virtue of the power in said board of trustees vested by the two several acts as such trustees aforesaid, the said trustees of the city of Grandview, in consideration of the premises and of the sum of twenty-nine (being one-tenth of the costs of entry) dollars in hand paid, the receipt whereof is hereby acknowledged, do by these presents convey unto—[Here follows the name of the grantee and description of the property conveyed].

"In witness whereof I have hereunto set my hand this fifth day of March, A. D. 1859, by authority of the said board of trustees.

"ANDREW B. MOORE,<br>
"<i>Chairman.</i>"

It is argued by counsel for plaintiff in error that inasmuch as the instruments state that they are executed under and by virtue of the provisions of the act of 1857, this must be accepted as true and binding, and further, since the act of congress required the deeds to be executed in conformity to the rules and regulations prescribed by the legislative assembly of states and territories, and if not so executed they should be void and of none effect, and the territorial act of 1857 prescribed that the conveyances therein provided for should be made by the mayor of the town, if incorporated, and if not incorporated, by the county commissioners, these deeds, being executed by neither, were void unless the word mayor in the act be construed as a generic term, and as such to include the chairman of the board of trustees of a town or city, and if this last view be entertained, that it devolved upon the parties introducing the deeds, and whose success depended on their validity in order to establish it, to show that the chairman of the board of trustees of the city of Grandview possessed such authority and was empowered or required to perform acts and duties which usually appertain to the office of mayor of a city, and thus bring him within the scope of such appellation, viewed as a generic term.   This argument is not tenable.   It must be remembered, as we have hereinbefore stated and shown, that by an act of the territorial legislature, passed in 1858, the act of 1857 was repealed, and these deeds were all executed subsequent to the passage of the act of 1858.  At the time, then, of the making of these deeds, the law of 1857 had no further existence.   The date of the entry of the land does not appear in the record.   The date of

the patent is April 1, 1859, so we cannot say
whether the entry was made during the life of the
act of 1857, or after the enactment of the law of
1858 on the subject; but however this may have
been, at the date of the conveyances in question
the act of 1858 was in force and the law of 1857
did not exist, had been repealed, and the recital in
the deeds referring to the act of 1857 as the basis
or source of authority for their execution had no
other or greater force or effect than if there had
been no recital, no reference to any law as author-
izing the performance of the act of making the
deeds. If there had been no recital of the au-
thority it would not have invalidated the deeds.
(*Burbank v. Ellis*, 7 Neb., 156.) The deeds must be
viewed as executed under the authority and pro-
visions of the act of 1858.

It is insisted that it should have been shown
that the city of Grandview had been incorporated
and that the parties to whom transfers had been
made were occupants of the premises or portions
of the property conveyed to them, or, in other
words, it was necessary that proof be made that
the parties to whom the deeds were made were
the proper ones; that all the acts to be performed
had been done or the facts required to exist by
the statute were existent at the time of the exe-
cution of the deeds. These were matters to be
investigated and determined by the person hold-
ing the trust and upon whom it devolved as a
duty, on demand by the proper party, to make a
deed,—in this case the chairman of the board of
trustees of the city,—and his settlement of the
questions was not subject to collateral attack. As
was said in the decision of the case of *Taylor v.
Winona & St. P. R. Co.*, 47 N. W. Rep. [Minn.], 453,

"The execution of a deed of a part of the town site by the judge, who is trustee for that purpose, is analogous to the grant of a patent by that department of the government whose province it is to supervise the various steps necessary to be taken to obtain title. The execution of a deed by the judge is in the nature of an official declaration and determination by him that all the requirements preliminary to the execution of the deed have been complied with, and that the person to whom it is issued is the person entitled to it. The doctrine of presumptions in favor of official acts obtains,—that the judge did his duty in all respects and had required the grantee to show by legal proofs that he was the party entitled to a deed and that he had complied with all the necessary prerequisites to its execution. Moreover, when a trustee in whom is vested the land constituting a town site, in trust for the occupants, has executed a deed of a parcel of such land to one claiming to be a beneficiary of the trust, no one who is not a beneficiary of the trust, but a mere stranger to the title, as is the defendant here, can call in question the validity or regularity of such conveyance, or, by subsequent intrusion upon the possession, acquire any right to inquire into or litigate the question whether all the steps required by law were taken, or whether the party to whom the deed was executed was the person entitled thereto. (*Anderson v. Bartels*, 7 Colo., 256; *Murray v. Hobson*, 10 Colo., 66; *Chever v. Horner*, 11 Colo., 68; *Mathews v. Buckingham*, 22 Kan., 166; *Ming v. Foote*, 23 Pac. Rep. [Mon.], 515; *Whittlesey v. Hoppenyan*, 72 Wis., 140; *Smelting Co. v. Kemp*, 104 U. S., 640; *Cofield v. McClelland*, 16 Wall. [U. S.], 331." *Tucker v. Chicago, St. P., M. & O. R. Co.*,

65 N. W. Rep. [Wis.], 515; *Lamm v. Chicago, St. P., M. & O. R. Co.*, 47 N. W. Rep. [Minn.], 455.) Nor was it necessary to prove the organization of the city in order to make the deeds properly receivable in evidence. (*Mathews v. Buckingham*, 22 Kan., 166.)

It is contended that it was necessary for the parties depending on the deeds from the trustees of the city as evidence of title, to show that A. B. Moore who signed the conveyance was chairman of the board of trustees, before they should have been received in evidence, or at least before instructing the jury that they were competent evidence and established one link in the chain of title. This was not one of the facts, the existence of which as a prerequisite to the execution of the transfer, he determined before making the conveyances. We have herein quoted portions of one of the deeds, and it was agreed that in such statement as we have copied they were all similar; and it will be remembered that it was not recited in the deed that A. B. Moore was chairman of the board of trustees, and he signed it "A. B. Moore, chairman," with no statement indicating of what body or organization he was chairman, and no reference to the board of trustees of the city of Grandview, unless it should be said that the deed, being one which, according to its recitals, was made by such trustees, and he signing it as "chairman," it must be presumed to be as such officer of the board stated in the deed. Had the recital of the capacity in which he executed the deeds appeared therein, or after his signature, it would have proved no more, as against plaintiff in error, than that he claimed to have executed them as such officer. It would not have been proof of the

fact that he was such chairman. The acknowledg-
ment identified Moore as chairman of the board of
trustees of Grandview city, but this was but for
the purposes of the acknowledgment, which was
no part of the deed, and was not substantive proof
of the fact as an independent fact. During the
trial there was introduced in evidence, over the
objection of the plaintiff in error, "Page 14, Book
of Corporation of Grandview," which, from its
statements, would seem to be the minutes of the
proceedings at a meeting of the board of trustees
of the city of Grandview, and that among other
things which transpired at the meeting of date
August 4, 1858, A. B. Moore was appointed chair-
man. This was identified by but one witness, who
was asked: "Q. You remember an organization
known as the Grandview Company?" to which he
answered: "A. Yes, sir," and his examination was
continued in part as follows: "Q. Were you a
member of it? A. I was." He was shown a book
and stated: "That is the minutes or records of the
meetings and transactions of the company—of the
board of trustees;" and again, in answer to a
question propounded by counsel for plaintiff in
error, he answered: "I know that it is the book
of the records of the transactions of the com-
pany;" and again: "Why, it is the records of
the proceedings of the company—the Grandview
Company—kept by the secretary or secretaries
of that company." From which it will be gath-
ered that the page of the book introduced in evi-
dence was not identified as being the minutes of
a meeting of the board of trustees of the city of
Grandview, but of the "Grandview Company,"
and was not competent as evidence of the proceed-
ings of the board of trustees of the city of Grand-
view. This witness also testified that he was a

member of the Grandview Company, and at one time its secretary; he thought its last one; that he knew who was chairman of the board of trustees of the company; that it was A. B. Moore and that there was never any other. Proof that A. B. Moore was chairman of the board of trustees of an organization called the Grandview Company had no relevancy or competency in this case. Unless he was chairman of the board of trustees of Grandview city he had no power or authority to act and execute the deeds transferring the title, held in trust by the board, to the beneficiaries of the trust, and without proof that he was such chairman the deeds were not evidence of the conveyance of the title. There being no proof of the fact of his chairmanship of the board of trustees of the city of Grandview, the court erred in instructing the jury that the defendants in error had shown a complete title, as these deeds signed by "A. B. Moore, chairman," constituted an indispensable link in the chain of each title to be proved.

On the facts or circumstances involved in the second, or affirmative defense, viz., adverse possession for a sufficient length of time to bar any action for recovery of the possession or title of the premises, we will not now comment. As there must be a new trial and they must again be submitted to the jury or a trial judge for determination, a discussion of them at this time is unnecessary and might be prejudicial to the rights of one or the other of the parties in another trial. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.

IRVINE, C., took no part in the decision.