EMERY M. STENBERG ET AL. V. STATE OF NEBRASKA, EX REL. CHARLES B. KELLER ET AL.

FILED JANUARY 7, 1897. No. 8281.

1. **Counties: PROPOSITION TO SELL PUBLIC GROUNDS: ELECTION.** The requirements of section 30, article 1, chapter 18, Compiled Statutes, in regard to the proportion of votes which must have been cast in favor of a proposition submitted at an election, to work its adoption, *held* applicable to the submission of a proposition to sell the public grounds of a county.

2. **Statutes: REPEAL: CONSTRUCTION.** It is a settled rule of construction in this state that a simultaneous repeal and re-enactment of a statute or section thereof, in terms or in substance, is a mere affirmance of the original and not a repeal thereof in the strict or constitutional sense of the word. *State v. Bemis*, 45 Neb., 724, followed.

3. ———: ———: ———. The act passed during the legislative session of 1887 entitled "An act to amend section 23 of an act entitled 'An act concerning counties and county officers,' approved March 1, A. D. 1879," did not repeal the succeeding section 24 of the act of 1879, as dependent upon section 23; neither did it repeal section 24 by implication. (Session Laws, 1887, p. 350, ch. 26.)

4. **Counties: PROPOSITION TO SELL PUBLIC GROUNDS: RESULT OF ELECTION: COUNTY BOARD.** The determination of whether or not the proposition to sell the public grounds of the county received the required number of votes to work its adoption, was not a matter for the official determination of the county board. The authority to make the sale depended upon it appearing from the abstract of the votes made during the official canvass of the returns of the election and filed with the county clerk that in favor of the proposition the requisite number of votes had been cast. As no official finding of the board which attempted the sale was necessary, the action of the county board which subsequently entertained and passed upon the claim of purchasers at the sale for repayment of the consideration, the claim being based on the void character of the sale for lack of authority in the commissioners to make it, did not involve a review or reversal of the finding of the former board.

5. ———: ———: ———: ———. The question of the title to the land attempted to be sold by the commissioners, and the validity of the conveyance or deed, were but incidental to the main one of the validity of the sale and must follow its decision, hence were not so involved in the consideration and adjudication of the claim before the commissioners as to present the question of their effect on the jurisdiction to hear and pass thereon.

6. Conveyance of Public Land: COLLATERAL ATTACK. *Green v. Barker*, 47 Neb., 934, distinguished.

7. ———: COUNTY BOARDS. The conclusions announced in the former opinion, *Stenberg v. State*, 48 Neb., 299, including the adherence to the doctrine of *Douglas County v. Keller*, 43 Neb., 635, approved and reannounced, but need not be here restated.

REHEARING of case reported in 48 Neb., 299. *Reaffirmed.*

*William D. Beckett* and *Read & Beckett*, for plaintiffs in error.

*Charles B. Keller* and *George W. Doane*, *contra*.

HARRISON, J.

George W. Doane and Charles B. Keller filed a claim against the county of Douglas to recover a sum of money which they alleged they had paid the county in consideration of the sale to them of certain real estate by the county or its commissioners; alleging further that the attempted sale was of none effect, for lack of authority in the commissioners to make it, hence the vendees had received no consideration for the money paid and demanded its repayment. The claim was rejected by the county commissioners, from which action an appeal was duly perfected to the district court, where, as the result of issues joined and a trial thereof, the claimants were awarded judgment. The proceedings in the cause in the district court were reviewed in error proceedings in this court and the conclusions reached announced in an opinion written by POST, J., in *Douglas County v. Keller*, 43 Neb., 635, and in which opinion appears a statement of the facts deemed sufficient for a due understanding by the reader of the discussion therein made of the subject-matters involved. As a result of the hearing in this court the judgment of the trial court was affirmed, and after the mandate of this court had been forwarded and entered in the district court, an application to that court for the issuance of a peremptory *mandamus* ordering the

county board to take such action as would result in a
warrant being drawn and issued in favor of the parties
entitled thereto in lieu of and for the payment of the
judgment and costs.   The writ of *mandamus* was ordered
to issue and the respondents in the action, the county
commissioners of Douglas county, presented the case to
this court for review, the result being an affirmance of
the decision of the district court.   The discussion of the
questions presented and the decisions of them were em-
bodied in an opinion prepared by NORVAL, J., in *Stenberg
v. State*, 48 Neb., 299.   A motion for rehearing on behalf
of the unsuccessful parties was filed and sustained, and
the case has been again argued and submitted.   In the
former opinion a statement of the facts was made, which
for convenience of reference we will here reproduce:

"The county of Douglas, being the owner of 160 acres
of land, which had been purchased and was used as a
poor farm, its board of county commissioners adopted a
resolution submitting to the voters of the county for their
adoption or rejection the proposition to sell a part of the
poor farm and with the proceeds build a county hospital.
This question was voted upon at the general election held
in said county November 2, 1886, and much less than one-
half and but little over one-third of the total vote polled
in said county at said election was cast in favor of said
proposition, although it received more than two-thirds of
all the votes cast on the question.   In February, 1887,
the east fifty acres of the poor-farm tract was subdivided
into lots and blocks and platted as an addition to the
city of Omaha.   In the following April, Charles B. Keller
and George W. Doane purchased from the county, at pub-
lic auction, three of the lots for $4,950.   One-third of the
purchase money was paid in cash, and for the balance
they gave to the county their three promissory notes, ag-
gregating $3,300, and secured the same by mortgage upon
the lots at the same time the county commissioners exe-
cuted to the purchasers a warranty for said lots.   Subse-
quently Keller and Doane paid two of the notes and

13

likewise paid the taxes upon the lots purchased by them, including taxes levied by the city of Omaha for street improvements. The other note remains wholly unpaid. In April, 1892, Keller and Doane filed with the county commissioners a verified itemized account or claim for the sums paid by them for said lots and for taxes, and demanded a return of the money thus paid, on the ground that the deed was void for lack of authority on the part of the commissioners to execute the same. The demand was refused, the claim was rejected and disallowed, and an appeal was prosecuted to the district court, where in May, 1893, the judgment in question was entered in favor of Keller and Doane. The latter has assigned his interest therein to the relator, the Merchants National Bank of Omaha. It is also shown by the record that there are available funds in the treasury of Douglas county sufficient to pay off and discharge said judgment."

Of the sections of the statute in force at the time in relation to the subject-matter of the sale of the public ground was one numbered 30, in relation to the submission of the proposition to sell to a vote of the electors of the county (see chapter 18, entitled "Counties and County Officers," Compiled Statutes, 1887), which reads as follows: "If it appears that two-thirds of the votes cast are in favor of the proposition, and the requirements of the law have been fully complied with, the same shall be entered at large by the county board upon the book containing the record of their proceedings, and they shall then have power to levy and collect the special tax in the same manner that the other county taxes are collected. Propositions thus acted upon cannot be rescinded by the county board." It is stated by counsel for plaintiffs in error that in the opinion in the case of *Douglas County v. Keller*, 43 Neb., 643, a doubt was expressed as to whether the section just quoted was applicable to an election on the subject of the sale of the public grounds. What was said in that opinion in regard to section 30 was as follows: "It is not clear from the language of the

sections which follow whether the provisions of section 30, requiring an affirmative ·vote of two-thirds of the electors voting at such election, applies to propositions for the sale of public property, or whether it relates exclusively to the authority for imposing such special taxes as are contemplated by law.    But that question is not necessarily involved in this controversy, since it is not seriously contended that less than a majority of the voters could authorize the sale by the county of its public property."    It will be noticed that it is stated that it "is not clear from the language of the section," etc., which is undoubtedly true, as the application of the section to an election on the question of the sale of the public land is far from being clearly apparent from the language employed.    But what followed the statement in the opinion in regard to the doubt renders it clear that what was observed in reference to it was but a passing thought by the writer, made *arguendo*, and without further or other weight, as the applicability of the section was not involved or being considered.

Counsel have reviewed at some length the course of legislation on the subjects involved in portions of chapter 18, to which we have referred, prior to and resulting in the establishing in force the several sections on the subject of the submissions of various propositions by the county board to a vote of the electors, and urge that it becomes apparent that it is not only doubtful whether the provisions of section 30 apply to an election on the question of a sale of public grounds, but it is a verity that they do not.    The precise question here mooted was under consideration by this court in the case of *State v. Anderson*, 26 Neb., 517, and it was announced: "The language of section 30 of part 1, chapter 18, of the Compiled Statutes, held to require a number of votes equal to two-thirds of all the votes cast upon any one question, or for all of the candidates for any one office voted for, or to be filled at the election at which is submitted a question of selling the public grounds or buildings of a county, to be

cast in favor of such proposition, in order to the adoption of such proposition." An examination of the legislation upon the subjects, and of the sections in force at the time of the transactions herein involved, leads us to the conclusion that the doctrine of *State v. Anderson* is correct, and it is therefore approved and followed.

It is contended for plaintiffs in error that, in the first enactments by the legislatures upon the subject of the sale of the public grounds of the county by the county commissioners, the requirement that, before any sale could be made, it should be authorized by a vote of the electors of the county, always appeared as a proviso in the section in which the powers generally of the commissioners were specified, which is true, and that in the laws passed in 1873 it appeared as an independent section, numbered 15 (it is now numbered 24); that although at all times since the change it has been numbered as a section of the statutes, it has retained its character of a proviso, a limitation of the grant made by the preceding section to which it refers and has referred in terms, and that a repeal of the section containing the grant would carry with it the proviso. It may be said that when the change was effected and the portion of the section which placed a limitation on the general grant was separated and numbered and made a distinct portion of the act, it lost, at least technically, if not in substance, its provisional character. It contained an allusion in direct terms to the sale mentioned in the preceding section, but was a separate part of the act. During the legislative session of 1887 section 23 of chapter 26, which contained the enumeration of the powers of the county commissioners, was passed, of which the portion we need notice was as follows: "The county boards of the several counties shall have power: * * * Third—To make all orders respecting the property of the county, to keep the county buildings insured, to sell the public grounds or buildings of the county and purchase other property in lieu thereof," etc., was the subject of amendment, and in

the amendatory act there appeared immediately after the word "thereof" the following: *"Provided,* That said county boards may, if they deem it for the best interests of the county to sell county property upon such terms of credit as shall by resolution of said county boards be determined upon; *Provided further,* That such deferred payments shall be for not more than two-thirds of the purchase price, the same to be secured by a note or notes, and a first mortgage upon the property so sold, said deferred payments to draw not less than six (6) per cent interest per annum from date until paid, said interest to be paid annually.   Said county boards shall also have the power to sell or negotiate, without recourse upon the county, said notes and mortgage so by them taken; *Provided,* The same shall not be sold for less than par value including accrued interest."   There being no other or further changing in the wording of the section of the statute, it being, except what we have last quoted, a re-enactment of the section.   The title of the amendatory act (see Session Laws, 1887, ch. 26) was as follows: "An act to amend section twenty-three (23) of an act entitled 'An act concerning counties and county officers,' approved March 1, A. D. 1879."   Section 2 thereof reads as follows: "All acts or parts of acts in conflict herewith are hereby repealed."   The whole intent and purpose of the amendment of section 23 was to allow a sale to be made on credit.   It was not the intention to in any manner or to any extent change the grant of power, either to enlarge or extend it, except in the particular just noted, but to continue the law in force as it was, to add to it no more than appeared in the proviso in regard to credit to be allowed purchasers.   The amendatory act was otherwise but a literal re-enactment of the section, retaining its number and arrangement and number of subdivisions, in which were respectively stated the specific grants of powers, and was clearly intended to continue it in force uninterruptedly and was not in a strict or proper sense a repeal.   (*State v. Wish,* 15 Neb., 448; *State v. Bemis,* 45

Neb., 724.)    There was no inconsistency between the sec-
tions of the statute as amended and section 24, nor were
they in any sense or degree repugnant or in conflict.
Further, we think it clearly appears from a consideration
of the scope and purpose of the amendment, the manner
in which it was made, and the terms employed in the
repealing clause of the amended section, that it was the
evident intention of the legislators not to repeal section
24, but to retain it, and we are satisfied it was not re-
pealed.    The continued existence of section 24, while not
of the questions presented, was, in the course of the de-
cision, recognized in *State v. Anderson, supra*, and also in
*Douglas County v. Keller, supra*, in which it was held:
"The provision of section 24, chapter 18, Compiled Stat-
utes, that county boards shall not sell the public grounds
of any county without having first submitted the question
to the electors thereof, is mandatory and an express limi-
tation upon the powers of the several counties."

In the brief of counsel for plaintiff in error on motion
for rehearing appeared the following statements of prop-
ositions which it was desired to urge: "The county board,
as an administrative body, has no power to say that a
deed of the county, valid upon its face, is void, and it has
no power to audit a claim against the county based upon
the alleged invalidity of such a deed prior to any adju-
dication that it is invalid." "The county board, as an
administrative body, had no power to review and reverse
the opinion and proceedings of a prior board in and
about the sale of the lots in Douglas addition." In the
brief on rehearing it was observed: "Stated generally,
the only question in this case is, did the county board of
1892 have jurisdiction to hear and determine the issues
involved in the controversy between Keller and Doane
and the county of Douglas?" In argument, several points
were discussed, all of them, however, connected with and
bearing more or less directly upon the main issues.    As
we now view the matters in dispute, they all hinge upon
the settlement of one or two main propositions, the most

important of which is whether the commissioners, when
they attempted to make the sale of the public grounds,
had authority or power so to do.   In opening the discus-
sion of this branch of the case we will first say that, as
we gather the real substance of the cause of action, this
being mooted to some extent in argument, it was to re-
cover the money from the county, for the payment of
which there was in fact no consideration, because for the
sale of some property to the claimants there had existed
no authority in the commissioners, hence the sale was
void and of none effect.   That an action at law may be
maintained in a case of this nature, when the property
sold and attempted to be conveyed was real estate, is
sustained in *Clark v. Saline County,* 9 Neb., 516; *Argenti
v. City of San Francisco,* 16 Cal., 282; *Pimental v. City of
San Francisco,* 21 Cal., 362; *McCracken v. City of San Fran-
cisco,* 16 Cal., 620; *Grogan v. City of San Francisco,* 18 Cal.,
590.   The power of county commissioners generally to
sell lands or public grounds of the county was conferred
by the portions of section 23 of the statute hereinbefore
quoted, but it was so limited and restricted in the suc-
ceeding section, 24, hereinbefore set out in terms, that
it never could become operative or be exercised as to any
of such property until the special authority was vested by
a vote of the electors of the county.   A submission of
the proposition to such vote, the manner of submission,
notice to be given, etc., are all provided in other sections
to which we have alluded, also the requisite number of
votes to carry it is prescribed, as we have seen in section
30, which we have discussed herein.   There is another
section of the statutes on the subject involved, which to
our mind, in view of the conditions developed in the case
~t bar, must play quite an important part in its final
adjudication, viz., section 29, which reads as follows: "At
the time specified in such notice a vote of the qualified
electors shall be taken in each precinct, at the place des-
ignated in such notice.   The votes shall be received and
returns thereof made, and the same shall be canvassed

by the same officers and in the same manner as required
at each general election." It is a part of the duties in a
canvass of the votes cast at an election that abstracts
be made showing the number of votes and how cast, etc.,
which are preserved in the office of the county clerk.
Such an abstract is an official showing of the facts re-
quired by law to be set forth therein, including the num-
ber of votes cast for or against any candidate for office
or proposition before the voters at such election. That
abstract of the canvass of the votes cast on the proposi-
tion submitted to the voters of Douglas county as to
whether the county commissioners should be empowered
to sell the lands of the county, out of the purported sale
of which this controversy arose, furnished complete in-
formation, from which, when viewed in the light of sec-
tion 30 of the law in which the proportion of the votes
necessary to carry the proposition was specifically ascer-
tained and stated, the fate of the proposition, and whether
adopted or not, would appear with mathematical cer-
tainty, leaving nothing open for doubt, quibble, or in-
vestigation. The fact would there be shown,—would ex-
ist. It is clear that the statute did not contemplate an
official finding or determination of the county board on
the subject of whether the proposition had carried or not.
No such task was required of them or committed to their
consideration; their only duty was to enter the fact on
their records which appeared from the official canvass.
(See Compiled Statutes, 1887, ch. 18, sec. 30.) If they
made an entry contrary to the reality as it appeared from
the abstract of votes, it did not constitute an official find-
ing or decision, and would not bind any one or confer any
power on them to sell the land described in the propo-
sition on which the electors voted. This must come to
them from the actual existence of the fact that the requi-
site number of votes had been cast for the proposition, to
carry it, as shown in the record of the votes. (*Dixon
County v. Field*, 111 U. S., 92; *Miller v. City of Amsterdam*,
43 N. E. Rep. [N. Y.], 632.) There was no official finding

or determination of the county board in respect to the votes polled and the result of the election, consequently the board which entertained jurisdiction and passed upon the claim of Keller and Doane was not, in so doing, called upon to review or reverse any decision of a former board. The want of authority or power of the commissioners arose from the lack of the requisite number of votes to work the adoption by the people of the proposition submitted, and this appeared from the abstract or record of the votes, and the attempt of the commissioners to make the sale was but an assumption of authority in the premises on their part and the acts performed in furtherance thereof were void, and no title to the property ever passed to the purchasers. That the supposed conveyance of the land was void and of none effect and that no title passed were but incidents of, and subsidiary to, the main issue, and when the sale was proved void for want of authority in the commissioners, and so adjudicated, the incidental matters fell with it; hence there was no governing questions or issues of the validity of the conveyance, or inquiry in regard to the title to real property which could militate against the jurisdiction of the board to pass upon the merits of the claim.

It is insisted that the doctrine announced by this court in the opinion in the case of *Green v. Barker*, 47 Neb., 934, wherein it was said: "Where property has been conveyed under the provisions of the act of congress of May 22, 1844, which may be termed the 'Townsite Act' (see 5 U. S. Statutes at Large, 657), by the United States to the corporate authorities of a town or city, or a trustee designated by law, a deed executed by the trustee or the party authorized by law to make the transfer, evidences the determination, by the party executing it, that all the preliminary steps have been taken and necessary requirements complied with, and that the person to whom the deed runs is the one entitled to receive it, and the question of the validity of the deed cannot be litigated in a collateral proceeding,"—is applicable and governing in

the case at bar, and, on the other hand, that the two cases are clearly distinguishable and unlike. We incline to the latter view. In the case of *Green v. Barker* there was in adjudication the right to make a collateral attack upon a deed duly executed by a party in whom the power to dispose of the land conveyed was fully vested by law, and in whom further rested the power to examine and determine the right of the party applicant for or demandant of a conveyance to the property, to so demand and receive the conveyance and title, to settle whether any such party had performed the acts or made the payments which by law constituted a consideration for the conveyance to him,—a question of whether there had been an irregular or mistaken exercise of a fully vested power or authority. In the case at bar it was not a query as to any irregularity or mistake in the exercise of an existing power, but the authority itself was denied; the power to act was controverted, which presented an issue for settlement entirely different from that raised by the facts in *Green v. Barker*, 47 Neb., 934.

We have now noticed and disposed of the main questions argued on the rehearing. There were some others, the disposition of which turn upon and must follow that of those directly settled; also some which were disposed of in the former opinion and with the discussion and settling of which at that time, on further examination, we are entirely satisfied, and will content ourselves at this time by signifying our approval. It follows that we adhere to the conclusions announced in the former opinion and that the judgment of the district court is

REAFFIRMED.